## STATE ex rel. HATFIELD v. MORELAND et al.

No. 20258. Opinion Filed Sept. 15, 1931.
Rehearing Denied Oct. 13, 1931.

Brown & Stater, W. L. Houts, and Adelbert Brown, for plaintiff in error.

L. Z. Lasley, E. W. Snoddy, and Mauntel & Spellman, for defendants in error.

ANDREWS, J. This action was instituted in the district court of Woods county on the 17th day of April, 1927, by W. F. Hatfield, a resident taxpayer of Woods county, Oklahoma, in the name of the state of Oklahoma, on the relation of W. F. Hatfield, against M. S. Moreland, Albert Ruse, and D. P. McNally, individually and as the board of county commissioners of Woods county, and the First National Bank of Alva, Okla., a corporation. The parties appear in this court as they appeared in the trial court. Hereinafter the plaintiff in error will be referred to as the plaintiff, the relator as relator, the defendants in error as defendants, the members of the board of county commissioners as the county commissioners, and the First National Bank of Alva as the bank.

The action was brought to recover the sum of $2,712.97 alleged to be due Woods county for funds unlawfully paid out by the county commissioners to the bank, and an equal amount as a penalty for the wrongful payment of the same, under the provisions of sections 8590 and 8591, C. O. S. 1921. The cause was tried to a jury. The jury returned a verdict in favor of all of the defendants except the bank and failed to agree upon a verdict as to it. The plaintiff moved for judgment notwithstanding the verdict of the jury and for a new trial, which motions were overruled and exceptions taken. The plaintiff appealed to this court.

The record shows that, pursuant to the provisions of section 9607, C. O. S. 1921, the bank listed the shares of stock thereof with the county assessor of Woods county for assessment for the years 1922, 1923, 1924, and 1925. The assessment lists for each of those years show the par value of the paid-up stock and the amount of the surplus, and for some of the years they show the amount of the undivided profits. They also show certain described tracts of real estate in Woods county, and the value thereof. The value of the real estate shown thereon was deducted from the par value of the paid-up capital stock, surplus and undivided profits, and the value of the shares of stock of the bank for taxation purposes was fixed at the difference between the par value of the paid-up capital stock, surplus and undivided profits and the value of the real estate listed. The shares of stock were placed upon the tax rolls of Woods county as personal property at the value so fixed, and each of the tracts of real estate of Woods county was placed upon the tax rolls of Woods county as real estate at the value of each so fixed. In none of the assessment sheets was any reference made to any real estate situated in Alfalfa county, and no deduction was made from the par value of the paid-up capital stock, surplus and undivided profits of the value of any real estate situated in Alfalfa county. We quote the portion of the assessment list for 1925, material to a discussion of the issue presented, as follows:

1. Exact name of corporation—The First National Bank of Alva.
2. In what business engaged (state explicitly)—banking.
3. Date of organization—September 28, 1900.
4. Under laws of what government, state, or territory organized—United States of America.
5. Amount of authorized capital stock (500 shares, par value $100 each) _____$50,000.00
6. Amount of capital stock paid up ____ 50,000.00
7. Amount of surplus _____ 10,000.00
8. Amount of undivided profits _____ 2,061.81
10. Net value of moneyed capital, including surplus and undivided profits (moneyed

capital as used includes money actually invested in business, whether represented by certificates of stock, debentures, or bonds) -------------------------------- 62,061.81

## Real Estate
### Description

E. 100 ft. Orig., Town, Alva, Lot 1. Blk. 38, Value Land $10,000, Value Impts. $18,000, Value & Impts. $28,000.

T. M. Hess Addition to Alva, Lot 11, Blk. 3, Value Land $500, Value Impts. $3,000, Value & Impts. $3,500.

S. ½ of S. E. ¼ of N. E. ¼, No. Acres 29, Sec. 14, Twp. 27, Rng. 14, Value Land $430, Value & Impts. $430.

S. E.¼ & E.½ S. W.¼ & N. W.¼ S. W.¼ & S. E. ¼ N. W. ¼, No. Acres 320, Sec. 21, Twp. 28, Rng. 18, Value Land $5,000. Value & Impts. $5,000.

Lots 2-3-4, Sec. 4, 28 & 18, S. W.¼ Sec. 34, Twp. 29, Rng. 18, Value Land $2,000, Value & Impts. $2,000.

N. E. ¼ & N. ½ S. E. ¼, Sec. 27, Twp. 26, Rng. 14, Value Land $4,000, Value & Impts. $4,000.

(Inserted in pencil: "Listed to D. W. Harrington")
12. Total valuation of land and town lots___$42,930.00
13. Net value of personal property. •
(Item 10 less Item 12) ---------------- 19,131.81
4,000.00

$23,131.81

The verification thereof is omitted.

The defendants contend that, during the period covered by the assessment lists, the bank was the owner of certain real estate situated in Alfalfa county; that during those tax years the valuation of that real estate should have been deducted from the valuation of the shares of stock, and that it was not so deducted. There is a dispute as to whether or not the bank owned the real estate in Alfalfa county claimed to be owned by it, and a considerable portion of the record consists of evidence in support of the contentions of the parties as to the ownership of the real estate. The fact that the bank did not have any bank record of the ownership thereof other than an unrecorded deed, that the value thereof was not considered by the bank in preparing its balance, that it was not reported to the Comptroller of the Currency as an asset, that the alleged grantor of the bank was permitted to mortgage the property after the date of the deed to the bank, that the bank paid that mortgage, that one of the grantors was the cashier of the bank, and a statement of the defendants in their brief, as follows:

"If the officers of the bank cared to hold their deed and not place the same of record, as a means of saving their grantors any embarrassment, there was nothing wrong in that, and no wrong can be inferred from it. The fact that the lands were mortgaged in the name of the grantors is no evidence that the title was not in the bank. The bank knew of the mortgage, the bank did not care to advance their grantors any money on the deal, but they were willing for the said grantors to get their money from other sources at that time. There was nothing wrong about that, and no wrong can be here inferred. The officers of the bank knew their grantors to be honorable men who would take no advantage of the bank, and the dealings throughout are just those dealings that might take place between any persons of known integrity and honesty upon a gentleman's agreement and understanding"

—made an issue of fact as to the ownership of the real estate, but, under the view we take of the law with reference to this case, it is immaterial whether or not the bank owned the real estate during the years in question. The court committed reversible error in permitting evidence of ownership thereof by the bank over the objection of the plaintiff.

The defendants contend that "said bank thereby was caused to pay taxes twice on the same property, to wit, that portion of its capital stock invested in real estate in Cherokee, Okla." In their brief they say:

"Section 9648, quoted above, and relied on herein, provides a means of recovering taxes paid to the county, when the taxpayer has paid taxes twice on the same property, as in this case, or has paid taxes on property in a county to which the same was not liable, as in this case."

Under that theory the bank filed with the county commissioners an instrument in words as follows:

"State of Oklahoma, County of Woods, ss.

"Personally appeared before me the undersigned N. A. Gettings, who, being first duly sworn, deposes and says that he is the cashier of the First National Bank of Alva, Okla., who is the owner of the following described property, against which taxes have been assessed for the year 19____, as shown below:

| Description | Sec. or Lot | Rge. or Block | State Equalized Value |
|---|---|---|---|
| | 1 | 15 | ~~15000~~ |
| | 2 | | Cherokee, Okla. |
| | 3 | | ~~12500~~ |
| 1922 - 15000 | | | |
| 1923 - 13500 | | | |
| 1924 - 13500 | | | |
| 1925 - 13500 | | | |

—and he says that said property is erroneously assessed as follows:

"That they were assessed on capital stock whereas the above property. should have been deducted as real estate owned by them.

"Therefore, making an erroneous assessment of

1922 - $753.00
1923 - 658.12
1924 - 616.26
1925 - 685.59

—amounting to $2,712.97, and ask that same be refunded.

"I, N. A. Gettings, do solemnly swear that I have read, or had read to me the above affidavit of assessment and know that the statements contained therein are true.

"(Signed)      N. A. Gettings.

"Subscribed and sworn to before me this 30th day of March, 1926.

"Clay D. Murrow, County Clerk."

—to which was attached an affidavit as follows:

"Affidavit.

"State of Oklahoma
                                     ss.
"County of Alfalfa

"Personally appeared before me the undersigned authority, Frank G. Munson, who upon his oath, deposes and says that he was one of the stockholders of the Cherokee Motor Co., a corporation; that the Cherokee Motor Co. was the owner of lots 1, 2 & 3 in block 15 in the original town of Cherokee, Okla.; that in the latter part of the month of October, 1921, the Cherokee Motor Co. transferred the legal and equitable title to the above described property to the First National Bank of Alva, Okla., by warranty deed, and delivered the same to the First National Bank; that the First National Bank of Alva, Okla., has been the owner of said real estate from said date and is now the owner and holder thereof.

"Affiant further says, that some time in the early part of January, 1923, a new deed was issued by the Cherokee Motor Co., to the First National Bank of Alva, Oklahoma, in lieu of the deed heretofore referred to; but that said ownership of said property dated from October 1921, at which time the said First National Bank of Alva, Okla., became the owner.

"(Signed)      Frank G. Munson.

"Subscribed and sworn to before me this the 2nd day of April, 1926.

"(Seal)                "W. R. Brakey,
                              "Notary Public.

"My commission expires Sept. 8, 1929."

When the instrument was presented to the county commissioners there were no taxes due from the bank to the county treasurer of Woods county. The county commissioners' minutes show the following:

"Adjusting of erroneous assessments. First National Bank, Alva, Oklahoma. Assessed as capital stock, whereas lots 1-2-3, block 15, Cherokee, should have been deducted as real estate owned by them, in 1922, 1923, 1924 and 1925, amounting to $2,712.97."

No certificate of error was issued, but a warrant on the sinking fund of Woods county in the sum of $2,712.97 payable to the bank was issued and delivered to the bank and the bank collected the money thereon.

It is the contention of the plaintiff that the allowance of the claim for refund and payment to the bank of the sum of money was illegal and unauthorized.

That the proper notice was served upon the county commissioners by ten resident taxpayers of the county to institute and diligently prosecute proper proceedings for recovery of the money so paid, and that they refused to bring an action for recovery of the money paid out, as aforesaid, is clearly shown. A considerable portion of the record consists of evidence of the facts necessary to be shown preliminary to the maintenance of this suit in the form in which it was instituted. There was no defense shown thereto and this record shows a compliance with the requirements of section 8591, C. O. S. 1921. It is not contended by the defendants that there was any failure to comply therewith.

The liability of the defendants, if any, is by virtue of the provisions of section 8590, supra, as follows:

"Every officer of any county, township, city, town or school district, who shall order or direct the payment of any money or transfer of any property belonging to such county, township, city, town or school district in settlement of any claim known to such officers to be fraudulent or void, or in pursuance of any unauthorized, unlawful or fraudulent contract, or agreement made or attempted to be made, for any such county, township, city, town or school district by any officer thereof, and every person, having notice of the facts, with whom such unauthorized, unlawful or fraudulent contract shall have been made, or to whom, or for whose benefit such money shall be paid or such transfer of property shall be made, shall be jointly and severally liable in damage to all innocent persons in any manner injured thereby, and shall be furthermore jointly and severally liable to the county, township, city, town or school district affected, for double the amount of all such sums of money so paid, and double the value of property so transferred, as a penalty, to be recovered at the suit of the proper officers of such county, township, city, town or school district, or of any resident taxpayer thereof, as hereinafter provided"

—and section 8591, supra, as follows:

"Upon the refusal, failure or neglect of the proper officers of any county, township, city, town or school district, after written demand made upon them by ten resident taxpayers of such county, township, city,

town or school district, to institute or diligently prosecute proper proceedings at law or in equity for the recovery of any money or property belonging to such county, township, city, town or school district, paid out or transferred by any officer thereof in pursuance of any unauthorized, unlawful, fraudulent or void contract, made, or attempted to be made, by any of its officers for any such county, township, city, town or school district, or for the penalty provided in the preceding section, any resident taxpayer of such county, township, city, town or school district affected by such payment or transfer, after serving the notice aforesaid and after giving security for cost, may, in the name of the state of Oklahoma as plaintiff, institute and maintain any proper action which the proper officers of the county, township, city, town or school district might institute and maintain for the recovery of such property, or for said penalty; and such municipality shall in such event be made defendant, and one-half the amount of money and one-half the value of the property recovered in any action maintained at the expense of a resident taxpayer under this section, shall be paid to such resident taxpayer as a reward."

The defendants contend that sections 8590 and 8591, supra, must be construed in connection with section 8589, C. O. S. 1921, for the stated reason that the three sections were enacted by the Legislature of 1901 as parts of one legislative enactment. The defendants contend that the three sections, when so construed, refer only to contracts with any of the members of the board of county commissioners. Three similar sections were adopted by the Legislature of 1901, but the three sections as they now appear in the Compiled Oklahoma Statutes were adopted with the adoption of the Revised Laws of 1910. Having been adopted as a part of that Code, they are to be considered as parts thereof and not as parts of the legislative enactment of 1901. The further objection is made by the defendants that section 8591, supra, relates only to "unauthorized, unlawful, fraudulent or void" contracts.

The defendants overlook that portion of the section which provides that, upon the refusal, failure, or neglect of the proper officers, after written demand, to institute or diligently prosecute proper proceedings at law or in equity for the recovery of "the penalty provided in the preceding section," any resident taxpayer affected, after serving notice and giving security for costs, may, in the name of the state as plaintiff, institute and maintain any proper action which the proper officers might have instituted or maintained for the recovery of said penalty. The

previous section, section 8590, supra, provides that every officer of any county who shall order or direct the payment of any money belonging to the county in the settlement of any claim known to such officer to be fraudulent, or void, or in pursuance of any unauthorized, unlawful, or fraudulent contract or agreement made or attempted to be made for any such county, and every person having notice of the facts, for whose benefit such money shall be paid, shall be jointly and severally liable in damage to all innocent persons in any manner injured thereby, and shall be jointly and severally liable to the county for double the amount of all such sums of money so paid, to be recovered at the suit of the proper officers of the county.

The statutes provide a complete procedure, and the record in this case shows that that procedure was followed. The former decisions of this court upholding those sections are admitted by the defendants, but they state that the theory presented by them herein has never heretofore been presented to this court.

There is no merit in the contention of the defendants that sections 8590 and 8591, supra, are not applicable to the facts shown by the record in this case.

The authority of a board of county commissioners is limited.

"A board of county commissioners can exercise only such powers as are conferred upon it by the organic or statutory laws of the state, or such as may arise by necessary implication from an express grant of power." In re Assessment of First Nat. Bank of El Reno, 64 Okla. 208, 166 P. 883; Dolezal, County Clerk, v. Bostick, 41 Okla. 743, 139 P. 964.

The county commissioners claim authority for their action by virtue of the provisions of section 9648, C. O. S. 1921, and they rely on the authority granted thereby. That section provides as follows:

"Whenever, at any of the regular meetings of the said boards (in January, April, July or October), upon complaint of the person beneficially interested, his agent or attorney, it shall be made to appear by the testimony of the claimant, and at least one reputable witness, borne out by the records of the county, that the same property, whether real or personal, has been assessed more than once for the taxes of the same year, or that property, whether real or personal, has been assessed in the county for the taxes of a year to which the same was not subject. the board is hereby empowered to issue to the complainant a certificate of error showing that the complaint has been investigated by the said board and that the said board

has been satisfied of the truth of the allegations of the said complaint, and direct the same to the county treasurer of their county, directing him to accept the said certificate as a payment of cash to the amount found by the said board to have been unjustly assessed, which said amount shall be named in the said certificate, and shall by the treasurer be credited upon his tax roll against the tax so found to be erroneous; and the treasurer shall retain the said certificate and shall be credited with the same, as cash, in his settlement as such treasurer."

An examination of the provisions of that section discloses that it applies where "the same property, whether real or personal, has been assessed more than once for the taxes of the same year, or that property, whether real or personal, has been assessed in the county for the taxes of a year to which the same was not subject." Where it is shown that either of those conditions exists, the county commissioners are authorized to issue a certificate of error showing that the county commissioners are satisfied of the truth of the allegations of the complaint and directing the county treasurer to accept the certificate as a payment of cash to the amount found by the county commissioners to have been unjustly assessed, and the county treasurer is authorized to credit upon his tax rolls against the tax found to be erroneous the amount thereof and to retain the certificate and be credited with the amount of the same, as cash, in the settlement as county treasurer.

There is nothing therein to authorize a refund of money paid for taxes or the issuance of a warrant on the sinking fund of a county for repayment of money paid for taxes. The defendants deny that they proceeded under or are affected by the provisions of section 9674, C. O. S. 1921, which, in terms, provides for the issuance of a warrant on the sinking fund. The instructions given by the court are based in part on the provisions of section 9674, Id. For that reason we will consider the authority to use the sinking funds of the counties of the state for that purpose.

It will be noted that the county commissioners authorized and executed a warrant on the sinking fund of Woods county, and that the funds ordered thereby were paid by the county treasurer from the sinking fund of the county to the bank. The contention of the defendants at the trial is evidenced by the statement made by their attorney to the jury as follows:

"They found that Woods county was indebted to the First National Bank because of this double assessment in the sum of $2,712 and some cents, I believe, and they found, that that amount was due. It became a matter of judgment that the bank obtained by the action of the board of county commissioners, against Woods county, and they issued a warrant, drawing on the sinking fund of Woods county, which is created always, for two purposes; one is to retire existing bonds; second, to pay interest on existing bonds, if there are any; and third, to pay any judgment that the county may have or legally owes, and that was done in this case."

If the allowance of a claim for a refund by the county commissioners was a judgment, which it was not and which it could not be, under our statutes, the same could not have been paid by a warrant on the sinking fund prior to the time that a tax had been levied for the payment of the judgment, and then only in three annual installments, as provided by sections 5658 and 8571, C. O. S. 1921. Evidently the defendants relied upon the provisions of section 9674, supra, at the time of the trial, and the trial court evidently relied upon the provisions of that section, as shown by the instructions to the jury. The defendants now deny the applicability of section 9674, supra, and by so doing they deny the applicability of the only statute of Oklahoma providing for the issuance of a warrant against the sinking fund for a refund of taxes.

Sinking funds are provided for by section 28, art. 10, of the Constitution of Oklahoma, which is as follows:

"Counties, townships, school districts, cities, and towns shall levy sufficient additional revenue to create a sinking fund to be used, first, for the payment of interest coupons as they fall due; second, for the payment of bonds as they fall due; third, for the payments of such parts of judgments as such municipality may, by law, be required to pay."

There is no constitutional authority for the payment from the sinking fund of anything other than the items provided for in section 28, art. 10, Id. Section 19, art. 10, of the Constitution provides that:

"* * * No tax levied and collected for one purpose shall ever be devoted to another purpose."

The sinking fund, having been created for specific purposes and from taxes levied and collected for those purposes, could not be devoted to any other purpose without violating that provision of the Constitution. This record clearly shows a violation thereof. No tax had been levied or collected for the sinking fund of Woods county for the purpose of paying to a taxpayer money paid by him for taxes.

The amount of excessive tax, if any, paid by the bank was disbursed by the county treasurer, under the provisions of the law, to the state, county, school district, and city. The county received only a relatively small portion thereof. The portion thereof received by the sinking fund was only a fractional part of that disbursed to the county. The county sinking fund, therefore, cannot be said to have received more than a small part of the amount of the tax paid by the bank, and the payment by the county commissioners to the bank, of the amount shown by this record to have been paid, through a warrant drawn on the sinking fund, was a direct violation of the constitutional provision hereinbefore referred to.

It appears to us that this is such a direct violation, not only of the terms of the Constitution, but of the intent of the makers thereof, as to require no extended discussion. Suffice it to say that the county commissioners were not authorized to direct the payment of money from the sinking fund of the county to a taxpayer who claimed that he had paid a greater amount of taxes on his property than he was lawfully required to pay by reason of the valuation of his property at a greater amount than the value that would have been placed thereon, had it claimed, at the time of the assessments of the property, that it owned real estate subject to taxation which was not shown on the assessment lists.

There is nothing in the instrument filed by the bank with the county commissioners that shows that the property had been assessed more than once for taxes for the same year, or that property had been assessed in the county for taxes of a year to which the same was not subject. The shares of stock of the bank were subject to taxation in Woods county. They were assessed in Woods county once each year for each of the years in question. They were not assessed more than once for the taxes for any year, and it was not claimed therein that they were assessed more than once for the taxes for any year, or that they were not subject to taxation.

The statement of the defendants in their brief, as follows:

"In the instant case the First National Bank of Alva, Okla., paid taxes twice on the same property for each of four consecutive years, as aforesaid. The collection of this money by the county treasurer of said county and state was illegal and void. This money being unlawfully collected by the county, did not become the property of the county, but remained the property of the said First National Bank, and was held in trust by said county treasurer for the said First National Bank. There was in theory and in legal contemplation no means by which this money could be spent by the county, and in theory the said sum of money lay in the treasury of said county awaiting the claims of the said bank. This was not an unlawful paying out of funds of the county; this was a refunding of money which the county had unlawfully collected"

—is contrary to any theory of the law of which we have any knowledge. The bank did not pay taxes twice on the same property for any of the years in question. The collection of the money by the county treasurer was not illegal and void. The money was not unlawfully collected by the county. It did not remain the property of the bank. It was not held in trust by the county treasurer for the bank, but it was disbursed by the county treasurer, as required by law, to the various municipalities. The allowance of the claim and the issuance and payment of the warrant was an unlawful paying out of the funds of the county. The showing made by the bank amounted to nothing more than a showing that the shares of stock of the bank were assessed for each of the years in question at a higher valuation than they should have been assessed because of the failure of the bank to claim a deduction from the value thereof because of the ownership of real estate in question. It was nothing more than a claim that the shares of stock were overvalued for taxation purposes. It was not within the provisions of section 9648, supra.

There is nothing in the provisions of section 9648, supra, authorizing a refund of taxes. The provisions of that section are for a certificate of error, directing the county treasurer to accept the certificate as a payment of cash to the amount found by the county commissioners to have been unjustly assessed.

The defendants in their brief say:

"The said bank had invested its capital stock in said lots, paid its taxes on the taxable valuation of said lots and at the same time paid its taxes on the same amount of capital stock of said bank in said Woods county, Okla. This clearly is a case of property being assessed twice for the taxes of the same year and years. * * *"

That statement overlooks the fact that real estate belonging to a bank is assessable to the bank as the owner thereof, that shares of stock of a bank are assessable to the bank as the agent of the owners of the shares of stock and not to the bank as the owner thereof, and that, in the payment of the tax on the shares of stock by the bank, the bank

acts only as the agent of the owner of the shares of stock.

The state acquires its right to tax shares of stock and real estate of national banks by virtue of the provisions of section 548, United States Code Annotated, which provides that the Legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within its limits, with certain limitations. The state is authorized to provide' for a tax on the shares of stock of such an association, the dividends derived therefrom by the owner or holder thereof, or the income of the association, the imposition of one of those forms to be in lieu of all others. There is a provision therein that nothing therein contained shall be construed to exempt real property of such associations from taxation in any state or subdivision thereof, to the same extent, according to its value, as other real property is taxed. See annotations shown in the Code. The shares of stock may not be assessed to the bank. See cases cited therein.

Pursuant to that authority, the state of Oklahoma has elected to tax the actual value of the shares of stock of national banks in the county and city where the bank is located and the real estate belonging to the bank. Section 9607, supra. The Legislature has gone further and has provided that, in determining the value of the shares of stock

pay any taxes levied upon their shares of stock respectively until it shall be made to appear to such bank or its officers that such taxes have been paid; and they may sell any of said stock to reimburse said bank for any taxes so paid on same; and any officer of said bank who shall pay over or authorize paying over of any such dividend or dividends or any portion thereof, contrary to the provision of this section shall hereby become liable for such tax; and if the said tax shall not be paid, the collector of taxes where said bank is located shall proceed to collect the same in the manner ' in which taxes on personal property are required to be collected by this act, or by suit in the district court." Section 9607, supra.

Those provisions were overlooked by the trial court in the trial of this action. Under those provisions there can be no question but that the shares of stock of a national bank are assessable as personal property. That was done in this case. The fact that the bank owned real estate upon which it had paid, or was liable to pay, taxes, affects the assessment of the shares of stock only as to the value to be placed on the shares of stock for taxation purposes. The shares of stock were not "assessed twice for the taxes for the same year."

The tax receipts shown by the record show that the tax complained of by the bank was personal tax. We quote one of the tax receipts for the fiscal year 1925, the tax having been paid on March 2, 1926, as follows:

County Treasurers Office
Woods County, Alva, Okla. 3-2-1926

Received of First Natl. Bank of Alva, Town—Township, the sum of _____ For First Half, All of the following taxes for the year 1925. No. 4172

| Description | Sec. or Lot | Rng. Or Blk. | Scl. Dist. No. | State Eqlzd Value | State Tax | Cons. Co. Twp. Munic. | Sch. Dist. Tax | Total |
|---|---|---|---|---|---|---|---|---|
| Personal Tax | | | 1 | 23131 | 28.92 | 304.17 | 254.44 | 587.53 |
| Real Estate Tax E. 100' | 1 | 38 | 1 | 28000 | 35.00 | 368.20 | 319.00 | 722.20 |
| Total | | | | | 63.92 | 672.37 | 573.44 | 1309.73 |

Triplicate          J. W. Hook, County Treasurer
1925          By_____R. W._____Deputy.

for taxation purposes, there may be deducted therefrom the portion of the capital stock of the bank invested in real estate situated in the state. '

The Legislature has provided:

"For the purpose of collecting such taxes it shall be the duty of every such bank, or the managing officer or officers thereof, to pay the tax assessed against said bank, or the stock thereof, and to retain so much of every dividend or dividends belonging to such stockholders as . shall be necessary to

This bank paid the tax on the shares of stock only once for each of the years in question, and in making those payments it did so as the agent of the owners of the shares of stock. The fact that the bank also paid taxes on the real estate belonging to it did not constitute double taxation.

The defendants contend that the decision of the county commissioners was a decision in a quasi judicial manner, which decision became final when no appeal was taken

therefrom. In support thereof, they cite section 5834, C. O. S. 1921, as amended by the Session Laws of 1923, chapter 43, and the decision of this court in Dixon v. Bowlegs, 93 Okla. 47, 219 P. 665. There is nothing in either the section or the decision relied upon that defeats the rights of the plaintiff herein. The authority contained in sections 8590 and 8591, supra, exists notwithstanding the provisions of section 5834, Id. There is nothing in the case cited to the contrary. Therein the action was in ejectment for possession under a claim of title through a tax deed. The court held that the deed was void on its face and denied the relief prayed for by the plaintiff therein. The dictum in that case is neither controlling nor persuasive as to the issue here. It relates to an action of the county commissioners in issuing a certificate of error and not to the allowance of a claim for a refund of taxes paid as appears in this case. Here no certificate of error was ever issued. Here a county sinking fund warrant was issued.

The defendants contend that they should not be liable herein, and the court instructed the jury that the county commissioners were not liable if they "did not know the said claim was fraudulent or void." Among the provisions of section 8590, supra, there is one limiting the liability of the county officers to the allowance of claims "known to such officers to be fraudulent or void," and making officers liable who have "notice of the facts." It is not contended here that the defendants did not have notice of the facts. There is nothing in the record to show that either the bank or anyone of the county commissioners did not know the facts in connection with the entire transaction. The language of section 8590, Id., "known to such officers to be fraudulent or void." refers to knowledge of facts and not knowledge of law. It is fundamental that every officer, as well as every other citizen, is charged with knowledge of the law, and no one may defend against the liability because of his ignorance of the law. Both the bank and the county commissioners are charged with knowledge of the unconstitutionality of their acts. They were presumed to know the provisions of the statute upon which they relied and they are charged with knowledge of the fact that there was no provision therein authorizing them to allow a claim for a refund of taxes already paid and no provision therein for the issuance of a warrant upon any county fund for any refund of taxes. Had they given any regard to the provisions of the statute upon which they rely, or of the Constitution by which they are bound, they must have known, as a matter of law, that they were

without authority to pay out funds provided by taxation for specific purposes for a purpose for which no tax had been levied or collected. As officers of the county, the county commissioners cannot be heard to say that they did not know that the county which they represented could not be required to pay to a taxpayer from its funds taxes that had been paid during prior years to the county treasurer, and which had been apportioned by the county treasurer to the various municipalities entitled thereto and paid by him to those municipalities. They must have known that Woods county was not, and, under the Constitution of Oklahoma, could not be required to pay from its funds money that had been paid by a taxpayer for the use and benefit of the state. the city, and the school district.

Paraphrasing the language of this court in Louisiana Realty Co. v. City of McAlester, 25 Okla. 726, 108 P. 391: Conceding that the bank made a mistake of fact in rendering its property for assessment, the mistake was caused by its own neglect, and, the payment having been voluntary, the law furnished no relief. In that case the court quoted with approval the rule stated by Judge Cooley in his work on Taxation (3rd Ed.) p. 1497, as follows:

"Every man is supposed to know the law, and, if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as a reason why the state should furnish him with legal remedies to recover it back"

—and:

"Mistake of fact can scarcely exist in such a case except in connection with negligence; as the illegalities which rendered such a demand a nullity must appear from the records, and the taxpayer is just as much bound to inform himself what the records show, or do not show, as are the public authorities. The rule of law is a rule of sound public policy also. It is a rule of quiet as well as of good faith, and precludes the courts being occupied in undoing the arrangements of parties which they have voluntarily made, and into which they have not been drawn by fraud or accident. or by any excusable ignorance of their legal rights and liabilities."

The situation in which the bank found itself was no doubt caused by its failure to comply with the United States statutes relating to national banks. Had it carried its real estate on its records as part of the assets of the bank, and had it reported them to its stockholders, the public and the Comptroller of the Currency, as required by the statutes, it would probably have shown

the same as an asset of the bank on its assessment sheet and it probably would have claimed a deduction in the value of its shares of stock for taxation purposes by reason of its ownership of the real estate. When, after a number of years, it found that it had made a mistake and had caused its shares of stock to be valued for taxation purposes at a greater amount than it was required under the law to value the same, it procured from the county, through the allowance of a void claim by the county commissioners, funds to which under the law it was not entitled. Having procured the same in that way, it is liable to the penalty imposed by the statutes of Oklahoma for having so done, and it cannot avoid that liability by saying that it was mistaken as to the law and that it honestly believed that it had a right under the law to the recovery of a part of the taxes it had paid. Nor can the county commissioners justify their conduct by saying that they were mistaken as to the law.

The case of Fast v. Rogers, Co. Treas., 30 Okla. 289, 119 Pac. 241, relied upon by the defendants, is in no wise controlling. There the court held that, in an equity case, relief would not be granted by a court of equity where there was a plain, specific, and adequate remedy at law. Here the action was not in equity, but at law, under the authority of a legislative enactment and in conformity with the procedure provided by the Legislature. There is nothing in the other cases cited by the defendants which supports their contention herein.

We do not consider it necessary to discuss the instructions of the court further than to say that the instruction of the court that, if the assessment of real estate "was not deducted from its assessment on the actual value of its shares of stock, then you are advised that the said claim was not a fraudulent or void one, but was a valid claim, and under such circumstances recovery cannot be had against any of the defendants, even though, as stated, the wrong relief was granted," was erroneous and prejudicial to the rights of the plaintiff. The issue as submitted by the trial court to the jury was largely whether or not the bank owned the real estate. That issue should not have been submitted to the jury.

There are many other errors presented by this record, but we do not consider it necessary to discuss them, as it is highly probable that they will not be repeated at another trial of this cause.

If the bank felt aggrieved at its assessment, it could have appeared before the board of equalization, as provided by section 9966, C. O. S. 1921, for the purpose of securing a correction of the erroneous assessment. If, for any good reason, it did not appear before the board of equalization, by making a showing of a reason therefor to the county commissioners, it could have appeared before them, under the provisions of section 9674, supra, for the purpose of securing a correction of the assessment. State v. State ex rel. Shull, 142 Okla. 293, 286 P. 891; Blake, Co. Treas., v. Young, 128 Okla. 153, 261 P. 923.

In this case there was no attempt to appear before the board of equalization and no explanation or excuse for the failure to do so. The defendants deny the application of the provisions of section 9674, supra. They did not come within the provisions of section 9648, supra. The county commissioners were without authority to order a refund of the taxes.

The judgment is reversed and the cause is remanded to the district court of Woods county, with directions to set aside the verdicts of the jury, to grant the plaintiff a new trial as to all of the parties, and further proceedings in conformity herewith.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. RILEY, J., absent.