Dear Honorable Pierce,
The Attorney General has received your request for an official opinion asking, in effect:
 Do the provisions of the Improvement District Act, codified at 11 O.S. 39-101 et seq. (1981), as amended in 1983, and in particular 11 O.S. 39-110(E), authorize a school district to pay for special assessments:
 1. by levying a tax in excess of the number of mills which may be levied pursuant to Okla. Const. Article X, Section 9; or
 2. by levying a tax through its sinking fund?
Your question addresses the means by which a school district may budget for and finance local improvements made by municipalities pursuant to 11O.S. 39-101 et seq. (1981), as amended in 1983. The question assumes that a city has complied with the applicable provisions of the Improvement District Act in initiating and completing the project and that school districts have been properly assessed for the improvements which have benefitted their property within the local improvement district.
 I
The apportionment of the costs of the improvements, as it affects school districts, is controlled by 11 O.S. 39-110(E) (1981) which provides:
 "Any property which shall be owned by the city, town or county, or any board of education or school district, shall be treated and considered the same as the property of other owners, and such city, town, county, school district or board of education within such district to be assessed may pay the total assessment against its property without interest within thirty (30) days from the date of the publication of the ordinance levying the assessment, or, in the event the same is not paid in full without interest within said thirty-day period, such city, town, county, school district or board of education shall annually provide by the levy of taxes a sufficient sum to pay the maturing installments of assessments and interest thereon." (Emphasis added).
The statute, of its face, permits the school district to pay its assessment in one of two ways: (1) It may pay the total assessment, without interest, within thirty (30) days of the publication of the assessing ordinance; alternatively, (2) The school district is required to provide for the retirement of the obligation by the annual "levy of taxes."
The first alternative is silent as to the source of the payment to be rendered by the school district nor is there express authorization for a specific type of levy to generate the funds for payment. The source of payment may fairly be implied to be the "ordinary" millage available to the school district pursuant to Article X, Section 9 of the Oklahoma constitution. The question naturally arises as to whether the "levy of taxes" identified by the second alternative is meant to describe anything other than the constitutionally delimited Article X, Section 9 levy implied by the first alternative. We believe it is not.
This issue arose in Chicago R. I. P. Ry. Co. v. Henderson, 29 P.2d 768
(Okla. 1934), a case in which a school district asked the county excise board to approve a levy over and above its fifteen mill limit to pay for certain paving improvements. The Oklahoma Supreme Court stated the controlling rule of law at its first syllabus:
 "A tax levy for the payment of paving assessments made against a municipality is a part of the current general fund, and a levy therefor in excess of 15 mills is void, being in excess of the constitutional limitation for general fund purposes." (Emphasis added).
See also, Magnolia Petroleum Company v. Jefferson County Excise Board,90 P.2d 648 (Okla. 1939); Tulsa County Excise Board v. Texas-Empire PipeLine Co., 68 P.2d 861 (Okla. 1937); and School District No. 4 of GarfieldCounty v. Independent School District No. 4 1/2 of Garfield County,4 P.2d 1031 (Okla. 1931). All these cases stand for the proposition that a tax levy in excess of the Article X, Section 9 limit is void.
The statute construed by the Supreme Court in Henderson was a predecessor statute to 11 O.S. 36-217 (1981), enacted in 1923, which provided the same two alternative payment timetables in language which is virtually identical to 11 O.S. 39-110(E) (1981). Thus, the Supreme Court's conclusion in Henderson that the tax levy to pay the paving assessments is a part of the current general fund is entitled to great weight in construing a similar provision in 11 O.S. 39-110(E). See,Walton v. Donelly, 201 P. 367 (Okla. 1921). The special assessment of the local Improvement District may not be paid from a tax levy in excess of the constitutional limits imposed by Article X, Section 9.
 II
In addressing your second question, it should be noted that there is no authority approving the use of sinking fund levies to pay for local improvement assessments in the prejudgment context. The constitutional parameters for sinking funds are set out in Okla. Const. Article X, Section 28, which provides:
 "Counties, townships, school districts, cities, and towns shall levy sufficient additional revenue to create a sinking fund to be used, first, for the payment of interest coupons as they fall due; second, for the payment of bonds as they fall due; third, for the payment of such parts of judgments as such municipality may, by law, be required to pay." (Emphasis added).
The statutes detailing the procedures for collecting judgments against "municipalities" (including school districts) are codified at 62 O.S.361 through 62 O.S. 365.6 (1981). They provide strict and detailed standards for payment of sinking fund monies to satisfy judgments. These statutes simply cannot be construed to permit sinking fund levies to pay special assessments unless the city's claim is reduced to a judgment taken in strict conformity with the statute (62 O.S. 362), evidenced by a certified copy of the journal entry (62 O.S. 365.2), and "spread on the budget" prior to payment (62 O.S. 365.5). Payment of an assessment from a sinking fund when the underlying judgment is known to be fraudulent or void could subject public officers to civil liability (62 O.S. 372).
The extant case law, while not on all fours with the factual pattern implicit in your question, supports the conclusion that the sinking fund cannot constitutionally be used for anything other than purposes enumerated in Article X, Section 28. The most recent case in this vein isSouthwestern Bell Telephone Company v. Oklahoma County Excise Board,618 P.2d 915 (Okla. 1980), holding that sinking fund payments to satisfy certain voidable judgments (because they were not made in strict conformity with the statutory standards) were violative of the Oklahoma Constitution. Additionally, no authority exists for making payments from county sinking funds for any purpose other than for interest coupons, bonds falling due and for judgments against the municipalities. See,State v. Moreland, 3 P.2d 803 (Okla. 1931).
The other two authorized uses of the sinking fund are not implicated in your question because the bonds involved in financing the improvements are not issued by the school district. It may be suggested that a sinking fund levy is available to the school district to pay an assessment based on local improvement district bonds issued by the city. We must reject such an expansive reading of a constitutional provision which has otherwise been construed so narrowly. See, Federal Deposit Ins. Corp. v.Casady, 106 F.2d 784 (10th Cir. 1939); State v. Moreland supra;Southwestern Bell Telephone Company v. Oklahoma County Excise Board, supra.
The limitations on the use of sinking fund levies is clear. There are only three narrowly defined purposes for which it may be used: bond payments, the interest thereon, and judgments against the school district. It is significant that none of the cases which grapple with the question of appropriate remedies for non-payment of improvement assessments raises the possibility that a sinking fund levy is a permissible funding vehicle. See, City of Healdton v. Board of Education,232 P.2d 148 (Okla. 1951) (bondholder may bring action, including mandamus, when school district refuses to levy annual taxes to pay for improvements); Board of Education v. City of Chickasha, 155 P.2d 723
(Okla. 1945) (judgments obtained against school district may be paid from sinking fund); Wilson v. City of Hollis, 142 P.2d 633 (Okla. 1943) (bondholder may maintain action to recover judgment for amount municipality fails to provide for improvements). Thus sinking fund levies are not available to meet the special assessment absent a judgment against the school district.
It is, therefore, the official opinion of the Attorney Generalthat:
 1. A school district may not finance special improvement district assessments by levying a tax in excess of the number of mills permitted under Okla. Const. Article X, Section 9.
 2. A school district may not utilize sinking fund levies pursuant to Okla. Const. Article X, Section 28, where no judgment has been rendered against it.
MICHAEL C. TURPEN, ATTORNEY GENERAL OF OKLAHOMA
NED BASTOW, ASSISTANT ATTORNEY GENERAL