## ATCHISON, T. & S. F. RY. CO. v. EXCISE BOARD OF WASHINGTON COUNTY.

No. 25334.     June 28, 1934.

Rehearing Denied Sept. 11, 1934.

Rainey, Flynn, Green & Anderson, and John P. Roemer, for plaintiff in error.

W. F. Hurt, County Attorney of Washington County; P. A. Sompayrac, Assistant County Attorney of Washington County, and J. Berry King, Attorney General, and Fred Hansen, Assistant Attorney General, for defendant in error.

Paul W. Updegraf, County Attorney of Cleveland County; Lewis R. Morris, County Attorney of Oklahoma County; Ted R. Fisher, County Attorney of Blaine County; C. C. Curry, County Attorney of Lincoln County; Marvin Shilling, County Attorney of Carter County; Stephen A. George, and W. L. Farmer, amici curiae.

OSBORN, J. This is an appeal by the protestant from a judgment of the Court of Tax Review denying certain portions of its protest of taxes levied by the excise board of Washington county for the fiscal year commencing July 1, 1933.

The protestant contends that a levy for the county was excessive to the amount of 1.5546 mills, that being the amount of levy in excess of the maximum of one mill authorized by the provisions of House Bill No. 387, chapter 122, Session Laws of 1933; that a levy for the city of Bartlesville was excessive to the amount of .3683 mill, that being the amount in excess of the maximum of six mills authorized by that act; that a levy for the town of Ramona was excessive to the amount of .9022 mill, that being the amount in excess of the maximum of four mills authorized by that act, and that a levy for the town of Vera was excessive to the amount of 1.049 mills, that being the amount in excess of the maximum of four mills authorized by that act.

In the language of the protestant:

"The sole question presented by this appeal is whether or not the municipal subdivisions of the state of Oklahoma are limited in their tax levies to the extent provided in chapter 122, Session Laws 1933 (House Bill No. 387)."

The excise board contends that the provisions of that act are not applicable in view of the amendment of section 9, article 10, of the Constitution, which was adopted by the people of the state on August 15, 1933.

Section 9, article 10, of the Constitution before amendment is as follows:

"Sec. 9. Except as herein otherwise provided, the total taxes, on an ad valorem basis, for all purposes, state, county, township, city or town, and school district taxes, shall not exceed in any one year 31½ mills on the dollar, to be divided as follows:

"State levy, not more than three and one-half mills; county levy, not more than eight mills; Provided, that any county may levy not exceeding two mills additional for county high school and aid to the common schools of the county, not over one mill of which shall be for such high school and the aid to said common schools shall be apportioned as provided by law; township levy, not more than five mills; city or town levy, not more than ten mills; school district levy, not more than five mills on the dollar for school district purposes, for support of common school: Provided, that the aforesaid annual rate for school purposes may be increased by any school district by an amount not to exceed ten mills on the dollar valuation, on condition that a majority of the voters thereof voting at an election, vote for said increase."

It will be noted that the total millage tax was limited to 31½ mills on the dollar, except as otherwise provided in the Constitution. It is especially to be noted also that the constitutional provision itself further limited, by specific division, the millage tax which might be levied by the municipalities. This constitutional provision had been held to be a limitation and not a grant of power (Thompson et al. v. Rearick, 33 Okla. 283, 124 P. 951), except as to school districts, as to which there was contained a specific grant of power to increase the annual rate of taxation for school purposes by an amount not to exceed 10 mills on the dollar (Excise Board of Marshall County v. School District No. 34, 156 Okla. 261, 10 P. [2d] 643).

By vote of the people on August 15, 1933, section 9, article 10, of the Constitution was amended by substitution to read as follows:

"Section 9. Except as herein otherwise provided, the total taxes for all purposes,

on an ad valorem basis, shall not exceed, in any taxable year, fifteen (15) mills on the dollar, to be apportioned between county, city, town and school district, by the county excise board, until such time as the regular apportionment is otherwise provided for by the Legislature.

"No ad valorem tax shall be levied for state purposes, nor shall any part of the proceeds of any ad valorem tax levy upon any kind of property in this state be used for state purposes; provided, however, any county of the state may make an additional ad valorem levy, not exceeding two (2) mills on the dollar valuation, on any property within the county, for separate schools for white and negro children, such aid or money raised therefor to be apportioned as provided by law; provided, further, the annual ad valorem tax rate for school purposes may be increased, in any school district, by an amount not to exceed ten (10) mills on the dollar valuation, upon all property in the district, on condition that a majority of the qualified voters of such district voting at an election, vote for such increase; provided, however, that the Legislature shall, by proper laws, prescribe the manner and method of conducting said election, but until such legislative provision is made, said levy may be made and said election held as now provided by law; and, provided further, that limitations on the levy of such additional 10-mill levy may be made hereafter by the Legislature.

"Provided, also, an additional levy may be made each year, in the state and in the various subdivisions thereof, on all personal and real property subject to ad valorem taxes, to reasonably take care of bonded and other valid indebtedness of the state and its various subdivisions existing at the time this amendment is adopted and becomes effective, but such necessary additional levy or assessment on such property to take care of such indebtedness existing and owing by the state and its subdivisions at such time shall in no event exceed levy or assessment for which such property would have been liable under the Constitution and laws of the state as same existed immediately prior to the adoption of this amendment. No provision hereof shall be construed to tax churches or schools."

By the first paragraph thereof, four material changes were made. The maximum of total taxes for all purposes on an ad valorem basis was changed from 31½ mills on the dollar to 15 mills on the dollar. The stated apportionment between the state, county, township, city or town, and school district was repealed. The county excise board was authorized to apportion the 15 mills on the dollar between county, city, town, and school district until such time as the regular apportionment is otherwise

provided for by the Legislature. The Legislature was authorized to provide for regular apportionment of the 15 mills on the dollar between county, city, town, and school district.

By the second paragraph thereof it was provided that there should be no ad valorem tax levied for state purposes, and that no part of the proceeds of any ad valorem tax levied upon any property in the state should be used for state purposes, with the provision that any county of the state might make an additional ad valorem levy, not exceeding two mills on the dollar valuation, on any property within the county for separate schools for white and negro children, such aid or money raised therefor to be apportioned as provided by law. It was further provided that the annual ad valorem tax rate for school purposes might be increased in any school district, upon the condition therein stated and in the amount therein stated.

In lieu of the "division" contained in the original constitutional provision, the amended section contained an express and new grant of power, in that the excise board was specifically authorized to apportion said 15 mills on the dollar between county, city, town, and school district, and such power was vested in said board "until such time as the regular apportionment is otherwise provided for by the Legislature."

The same Legislature which authorized the submission of this amendment enacted chapter 122, Session Laws 1933 (House Bill No. 387). By a careful reading of said bill it is to be noted that the provisions thereof fix limitations upon the taxing authorities below the constitutional limitation as provided in the section of the Constitution before amendment. It is significant to note also that the people in the adoption of the amended constitutional provision did not provide that the apportionment should be subject to prior apportionments or limitations thereof theretofore made by the Legislature, but specifically provided that the excise board might have authority to apportion until such time as the regular apportionment is otherwise provided for by the Legislature. This clearly contemplates future legislative action and is clearly indicative of an intent that the prior acts relating to limitations in behalf of the various municipalities should not be controlling of the action of the excise board in its new responsibility. To hold otherwise would be to make meaningless the clause contained in said amended provision "until such time as the regular apportion-

ment is otherwise provided for by the Legislature."

The specific question presented for determination is whether or not House Bill No. 387, supra, is superseded by the constitutional amendment. The general rule for construing constitutional provisions in connection with existing statutory · law is announced in the case of W. Fine & Son v. Hall (Cal. App.) 21 P. (2d) 697, as follows:

"In 12 C. J., p. 725, sec. 97, we find the following:

"'While a new Constitution is by its very nature intended to supersede a prior Constitution, it is not intended to supersede the entire body of the statutory law. To the extent, therefore, the existing statutes are not expressly or impliedly repealed by the Constitution, they remain in full force and effect.' Of course, if the amended Constitution is inconsistent, a repeal by implication necessarily follows, although no mention is made of the inconsistent statute. However, the law is well settled that repeals by implication are not favored, and, if the statute can stand, it will be given full force and effect until expressly repealed by the Legislature."

In the case of Hawley v. Anderson, County Judge, et al. (Ore.) 190 P. 1097, 195 P. 358, it is said:

"While a constitutional amendment is higher law than a legislative enactment, it has the same effect upon existing legislation and may amend or repeal a prior constitutional or statutory provision conflicting with it if such is its necessary effect or intent."

In the case of Shaw v. Grumbine, 137 Okla. 95, 278 P. 311, it is said:

"The object of construction, applied to a Constitution, is to give effect to the intent of its framers, and of the people in adopting it. This intent is to be found in the instrument itself; and when the text of a constitutional provision is not ambiguous, the courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument."

We quote from the body of the opinion in the case of City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640, as follows:

"In the case of State ex rel. Murphy v. Barnes, 24 Fla. 29, 3 South. 433, it is held: 'When the Constitution prescribes the manner of doing a thing, that is in effect a prohibition against the passage of a law prescribing a different manner of doing it.'

"In the case of Parks v. West, 102 Tex. 11, 111 S. W. 728, the rule is announced as follows: 'Where a power is expressly given by the Constitution and the means by which or the manner in which it is to be exercised is prescribed, such means or manner is exclusive of all others'."

It is noted that there is a more substantial difference in the rule for construction of constitutional provisions than for the construction of legislative enactments. In the matter of construing legislative enactments the court is free to consider the facts and circumstances surrounding the enactment of a statute and the evident purpose and spirit thereof, and to give effect thereto even though the spirit, purpose, and intent of the act is contrary to the meaning expressed on its face. In construing constitutional provisions, such latitude is not given to the courts, and where the provision is plain and unambiguous on its face, the court has no alternative but to say that the provision means what it says.

The act in question very plainly grants to the excise boards the authority to apportion the 15 mills to the various municipalities. This constitutes a self-executing grant of power to the county excise boards. A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected and the duty imposed may be enforced. Zachary v. City of Wagoner, 146 Okla. 268, 292 P. 345; State ex rel. Reardon v. Scales, 21 Okla. 683, 97 P. 584.

We cannot escape the conclusion that there is an irreconcilable conflict between the provisions of House Bill No. 387 and the constitutional amendment. The right of the excise board to apportion the maximum amount of tax is as all-inclusive as is the right of the future Legislature to regularly apportion the same. The succeeding Legislature cannot be restricted in its function by the prior act (House Bill No. 387), nor can the excise board be so restricted. The only limitation is found in the maximum of 15 mills, as provided by the amended section of the Constitution. By the provisions of the amended constitutional provision providing for the apportionment of the total tax of 15 mills between the named municipalities, the people intended to abrogate the effect of the prior legislation, both constitutional and · statutory, relating to the division of the total maximum taxes which might be levied, and the limitations fixed by prior enactments, and for the time being to delegate sole authority to the excise board to perform that function, specifically reserving to future Legislatures the authority to regularly apportion said total tax between the named municipalities.

This constitutional grant of legislative

power to the excise board is inconsistent with the contention that it is limited by prior legislative enactments. A drastic reduction in total taxes was sought to be effectuated; the prior acts of limitation, as amended by House Bill No. 387, related and were geared to a total millage ad valorem tax of 31½ mills instead of 15 mills, as provided by the amended constitutional provision. In the consideration of the necessities of the people of the various municipalities, it was contemplated that the excise board, previously set up by the Legislature as an important tribunal in the general scheme of taxation, would be cognizant of the local existing conditions, and would apply a proper and flexible discretion in apportioning the total taxes authorized to be levied by the amended provision. That the authority of the excise board was to be temporary is indicated by the provision authorizing future Legislatures to apportion. The uncontrolled acts of the excise boards may disclose the wisdom of this safeguard. The evident purpose, as is contended, was to reduce taxes, and the unrestricted action of the excise board may, in some instances, thwart this splendid purpose. But future Legislatures are invested with full power to curtail this evil.

It is urged, however, that to give the amended constitutional provision the construction hereinabove set forth would annihilate the entire scheme and system of taxation and the limitations thereof embraced within the various legislative enactments existing at and passed since the advent of Statehood, and that under said construction the excise board would be authorized to apportion 3 mills, or 5 mills, or any number of mills, to the county or city for special purposes, whereas chapter 122, Session Laws 1933, specifically limits the levies of counties and cities for special purposes to 1 mill each. We point out, however, that the amended constitutional provision does not purport to authorize the excise board to apportion the millage tax to a particular purpose for which appropriations may be made under legislative authority. The amended constitutional provision grants legislative power to the excise board to apportion the authorized millage tax "between county, city, town, and school district." This is a separate and distinct grant of power from the authority vested in excise boards by the existing provisions of law relating to the levying of taxes for the various municipalities. To justify a levy by the various municipalities for a particular

purpose, there must be an express or implied legislative grant of power. A., T. & S. F. Ry. Co. v. State, 28 Okla. 94, 113 P. 921. Under the constitutional amendment, the respective municipalities make the levies after the excise boards of the respective counties have made the apportionment, such apportionment to be made by the respective excise boards until such time as the regular apportionment is otherwise provided for by the Legislature.

The question is not raised for determination in this case, but owing to the fact that a public question is involved and confusion may occur in the making of levies for the fiscal year 1934-1935, we deem it proper to express our view upon the question of the proper manner of apportionment. The excise board should by general resolution, before levy, apportion to the county, cities, towns, and school districts the maximum number of mills, not exceeding 15 mills, which may be levied for such year. In so doing, it is authorized to classify such municipalities in accordance with constitutional or statutory classifications. But the apportionment so made should be applied generally to each particular classification.

The judgment of the Court of Tax Review is affirmed.

CULLISON, V. C. J., and SWINDALL, McNEILL, BUSBY, and WELCH, JJ., concur. RILEY, C. J., and ANDREWS, J., dissent. BAYLESS, J., absent.

ANDREWS, J. (dissenting). I dissent from the opinion in this case.

The amendment of section 9, article 10, of the Constitution was not a grant of power to the excise board to make tax levies. It, like its predecessor, the original section, was a limitation on rates of levy, but it included a provision authorizing the excise board to do that which the people had done in the original section, that is, to apportion the maximum rate of taxation.

Under the provisions of the amendment, the excise board has authority to apportion the maximum 15 mills, but it has no authority to make tax levies. Tax levies are made under the provisions of section 20, article 10, of the Constitution, which provides:

"The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes."

The distinction which must be kept in mind is that between apportioning the maximum of 15 mills, which is one thing, and the making of tax levies, which is another. There is no authority granted by the amendment of section 9, article 10, to the excise board to make tax levies. When tax levies are to be made, they must be made under the legislative limitations in existence.

Heretofore we have had a constitutional limitation on the rate of taxes and the maximum amount has been apportioned by the provisions of the Constitution. When an excise board proceeds under the authority conferred upon it by the provisions of the amendment of section 9, article 10, and apportions the maximum rate of taxation, it has the effect of creating a constitutional limitation, which constitutional limitation, like the former constitutional limitation, is subject to legislation limiting the rate of taxation.

In my opinion, though the excise board had apportioned the maximum rate of taxation, a thing which it did not do in this case as admitted in oral argument, that apportionment would have operated only as a constitutional limitation on the rates of levy, and the amount so apportioned would be subject to the legislative limitations in existence at that time. In other words, though the excise board should apportion the 15 mills maximum rate of ad valorem taxation in a way that would give to a political subdivision a greater portion than the rate limited by legislative enactments, the legislative enactments would operate as legislative limitations and would prevent such a levy as was made in this case.

In my opinion, when the excise board has met and apportioned the maximum of 15 mills for ad valorem taxation purposes, the effect is no more than the effect when the the people in the Constitution made the apportionment, and the legislative limitations are as much applicable to the apportionment made by the excise board as they were to the apportionment made by the people in the Constitution by the provisions of the former section. If the Legislature could limit the maximum rates of taxation in the Constitution, so could the Legislature limit the maximum rates of taxation provided in the apportionment made by the excise board, and since the Legislature could limit those rates, its former limitations thereof are not in conflict with the provisions of the Constitution, as amended, and prevail.