### TULSA COUNTY EXCISE BOARD v. TEXAS-EMPIRE PIPE LINE CO. et al.

No. 27376. May 18, 1937.

Rehearing Denied June 15, 1937.

Holly L. Anderson, Co. Atty., and Fred A. Fulghum, Asst. Co. Atty., for plaintiff in error.

Hunt & Eagleton, for defendants in error.

WELCH. J. We first consider the protested levy of joint union graded school district No. 1. This school district lies mostly in Tulsa county, but includes some territory in Pawnee county. The district, however, is managed and controlled by the county superintendent of Tulsa county. The estimates of the district are filed with and approved by the excise board of Tulsa county, and the tax levy is spread and extended upon the order of the excise board of Tulsa county. The estimate for the fiscal year 1936-37 was so approved. By former general allocation order the Tulsa county excise board had allocated the 15-mill limit of levy so that so far as that limit was concerned the levy for this district could be made up to 6 mills. The levy was made for 6 mills. The protest is based upon the allegation that theretofore the excise board of Pawnee county had so made its allocation order that 4.75 mills was the limit of school district levies in Pawnee county in districts situated as was that portion of this district which is in Pawnee county. It is urged here that the excise board of Tulsa county in approving estimates of this school district, and approving the levy on property in that district in Tulsa county, could not go beyond the limit fixed by the allocation order of the Pawnee county excise board as to the limit of levy in Pawnee county. No authority is cited to sustain that contention. The contrary is demonstrated by our constitutional and statutory provisions relating to the levy of such taxes. There is no specific statutory provision for the levy of taxes in joint school districts. The financial statements and estimates are submitted and approved and the tax levy spread or extended as in the case of other school districts. The limit of levy in each subdivision or municipality of each county of the state is fixed by the allocation order of the excise board in that county under section 9, art. 10, of the Constitution, as amended in 1933. Atchison, T. & S. F. Ry. Co. v. Excise Board of Washington County, 168 Okla. 619, 35 P. (2d) 274.

When the Tulsa county excise board approved the estimate of this school district, the only limit applicable thereto was the limit of 6 mills theretofore allocated by the Tulsa county excise board. There was no authority of law for that board to look to or be bound by the allocation order of the excise board of any other county. This ad valorem tax levy against taxable property in Tulsa county was approved by the excise board of Tulsa county, and was within the limit of levy theretofore allocated by that board, and was therefore a legal levy. The protestant points out that this may result in a slight difference of levy in that part of this district situate in Pawnee county. If that be true, it does not necessarily follow that the levy in that part of the district in Tulsa county here under attack is illegal. This is a levy in Tulsa county, and if it meets all the tests of the legal levy for school districts of this character in Tulsa county, then it is a legal levy in Tulsa county. The protestants here urge an inequality of taxation between taxpayers in this district in Pawnee county and those in Tulsa county. Generally, of course, there is no requirement that levies in different counties be uniform or equal one with the other, and much inequality may exist where each of the county excise boards is made a separate allocation agency, as is true under the constitutional provision referred to. If it be that such difference of levy or inequality of levy (if that be the proper term) should not exist, and if it be true that uniformity should exist even in cases such as this, then that result must be achieved

by constitutional or statutory provision. This court should not indulge in judicial legislation upon the subject. Since this levy was made in Tulsa county pursuant to approval of the estimate by the excise board of that county, and meets the test of a legal levy in Tulsa county, we hold that there is no illegality in the levy subject to protest under the provisions of section 12306, O. S. 1931. The Court of Tax Review sustained this protest apparently upon the theory that it was illegal when subjected to the test of legality of levy in Pawnee county. This we hold to be an erroneous test of legality of levy in considering a protest under the statute just referred to. The judgment of that court as to this item of protest is therefore reversed, with directions to deny this protest.

We next consider the levy of school district No. 26 in Tulsa county. A portion of the assessment was successfully protested on the theory that the levy was not in accord with the allocation of limit previously made by the excise board. The excise board for the year invo'ved adopted a system of classification in connection with its apportionment of limitations under section 9, art. 10, of the Constitution, as amended in 1933. The apportionment resolution provided:

"In instances involving cities and incorporated towns and school districts having a valuation of less than fifty million dollars, the allocation sh'all be: To cities and incorporated towns not to exceed 4.531 mills and to school districts not to exceed 5 mills."

And:

"In instances not involving cities and incorporated towns, the allocation shall be to school districts, having a valuation less than fifty million dollars, 6 mills."

This procedure appears to be in fair accord with the rule of Atchison, T. & S. F. Ry. Co. v. Excise Board of Washington County, 168 Okla. 619, 35 P. (2d) 274.

School district No. 26 had a valuation less than fifty million dollars. It had a town within its bounds, but no levy w'as made for the town.

It is suggested by the excise board that the allocation thus made is neither arbitrary nor capricious, and that view is supported by the rule of St. L.-S. F. Ry. Co. v. Tulsa County, 171 Okla. 180, 42 P. (2d) 537.

School district No. 26 had an assessed valuation of less than fifty million dollars and had a town within its bounds. Its allocated limit of levy was therefore 5 mills

by the quoted allocation order. No levy was made for the town, and the school district levy was made at 6 mills. It appears that the school district levy was made at 6 mills (1 mill more than the allocated limit of levy of 5 mills) on account of the fact that the town located within the school district did not require a town levy within its allocated limit.

The language employed by the excise board in its resolution heretofore quoted is clear. There is no provision anywhere contained in the resolution or allocation order which apportions to school districts more than 5 mi'ls where such school district has a city or town within its bounds.

The Court of Tax Review held that this 6-mill levy was illegal by one mill as being to that extent in excess of the 5-mill limit applicable to the district by the allocation order. That portion of the judgment is affirmed.

The next item of protest involves a failure to transfer to the sinking fund, moneys received into the general fund during the fiscal year 1934-35 as collection of delinquent taxes levied for the general fund in prior fiscal years. The protestant contends that such moneys should be required to be transferred to the sinking fund and used in payment or partial payment of certain judgments against the county. Material facts are that unpaid general fund warrant indebtedness, represented by county warrants held as investments of the sinking fund of the city of Tulsa by the city treasurer of that city, was reduced to judgment. These warrants consisted of $191,637.12 of 1931-32 warrants, and $57,541.05 of 1929-30 warrants. These judgments have not been paid.

If the general fund warrants had not been reduced to judgment, the moneys collected for delinquent taxes for any prior year would unquestionably be devoted to the payment of outstanding unpaid warrants issued against general fund appropriations for that year. The question now is whether such moneys will follow the obligation into the sinking fund to the extent necessary to pay the unpaid portion of the judgment.

It seems clear that these judgments became sinking fund obligations to be paid by annual sinking fund levies. See section 28 of article 10 of the Constitution; section 5913, O. S. 1931, as amended by chapter 27, S. L. 1933.

No distinction is made as to judgments which are recovered by reason of prior general fund obligation or liability, but under

such provisions of the Constitution and statutes all judgments are made sinking fund obligations, with specific provision for sinking fund levies to pay them. No provision is made for any moneys properly in the general fund to be expended in payment of any judgment against the county, nor for any such moneys to be transferred to the sinking fund to be there used in payment of any judgments.

The protestant cites section 19, art. 10, of the Constitution as follows:

"Every act enacted by the Legislature, and every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body, levying a tax shall specify distinctly the purpose for which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose."

It is urged that this provision expressly requires that these moneys now properly in the general fund must be transferred to the sinking fund for use as above indicated. We do not find that the quoted provision contains such requirement, in view of the specific provision as to judgments in section 28 of article 10. The original tax levies were not in fact made for the specific purpose of the appropriations against which these warrants were drawn. Those levies were made to generally finance, or for the general fund requirements of the county. When thereafter the taxes are collected and the money properly used in the general fund for purposes for which general fund moneys may be properly used, it would seem that the quoted provision of section 19 of article 10 of the Constitution is not violated.

When these taxes were originally levied and it came time to "specify distinctly the purpose for which said tax is levied" (as provided in section 19, article 10, supra), the only "purpose" that could be "specified distinctly" was for general fund purposes or for the purpose of financing the general fund. No portion of the county general fund levy could be "specified distinctly" for the "purpose" of any particular general fund appropriation or any particular general fund warrant. While money received in the general fund is in a sense pledged to pay general fund obligations, it must be remembered that these warrants had ceased to be general fund obligations. They had been merged into a judgment, which was a sinking fund obligation. The Constitution itself preserves the severalty and distinction between the general fund and the sinking fund, and between the obligations of the general fund and the obligations of the sinking fund.

It is suggested, with some supporting logic, that it would be better business policy to adopt and follow the plan contended for by protestant, in the case of judgments recovered on warrants. If that be true, such result should be accomplished by proper change of law. This court is not the proper agency to bring it about. The Court of Tax Review sustained the protest as to this item, and thereby erred. The judgment on this item is reversed, with directions to deny.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS, CORN, and HURST, JJ., concur. BUSBY, J., dissents. RILEY and GIBSON, JJ., absent.

BUSBY, J. (dissenting). This case involves three questions, neither of which is specifically answered by any prior decision of this court. At least one phase of this case is very important to the taxpaying public of the state. This is the portion of the opinion which holds that taxes levied for and pledged to the payment of general fund obligations are, if collected after general fund obligations have been merged in judgment, but before sinking fund levies have been made for the payment of such judgment, released and become available for expenditure in subsequent years. This point is the last one dealt with in the majority opinion, but because of its relative importance will be first treated here.

In my judgment collections made during a subsequent fiscal year of taxes levied to meet the general fund obligations of a prior year should be devoted to the payment of those obligations so long as they remain unpaid and their payment has not otherwise been definitely provided for, even though the obligations have been merged in judgment. This conclusion, if permitted to prevail, would conform to the spirit and purpose of our constitutional and statutory system of limitations on tax levies and would preclude a method of evading those limitations, which method of evasion is permitted, in effect, by the majority opinion.

It is true that tax levies for sinking fund purposes are distinct from those for general fund purposes, but the maintenance of that distinction does not require the complete oversight and partial nullification of the system of limitation on tax levies so carefully established by our tax laws. In my opinion both features of the tax law can be maintained without permitting one to work the destruction of the other.

The soundness of the rule approved in the majority opinion is best tested by viewing its practical operation.

Municipalities of this state cannot expend moneys or contract indebtedness for current expenses of general government in excess of appropriations for that purpose. Appropriations must be kept within the income and revenue of the municipality which is predetermined (except in the case of supplemental appropriations) upon calculations made at or as of the commencement of the fiscal year. Generally speaking, there is available for appropriation the surplus balance from the previous year, the estimated income from sources other than ad valorem taxes, and such amount as may be calculated to be produced by an ad valorem levy on taxable property within the municipality.

Each of these items is limited. The surplus balance to the actual amount thereof, the estimated income to the amount that can be expected to be derived therefrom based upon the experience of the past year and the tax levy for general government purposes by the limitation contained in section 9 of art. 10 (amended in 1933), as allocated by the excise board of the county in which the municipality is situated.

It is a matter of common knowledge that taxing officers of the various municipalities of this state in computing their budgets provide for expenditures to the full extent of the aggregate limitation.

With this general picture in mind, let us adopt a set of arbitrary figures for an imaginary municipality for a given fiscal year and apply to them the rule adopted in the majority opinion.

At the beginning of the fiscal year 1936-37 our municipality has a surplus balance of $20,000 available for appropriation. Its estimated income from sources other than ad valorem taxes for the current year is $10,000. The limitation upon its tax levies for current expenses of general government is six mills, which, after deduction for delinquencies not in excess of the statutory limit, will enable the municipality to raise $60,000 from that source. The total amount available for expenditure is $90,000, and appropriations to that extent are made. During the fiscal year $90,000 in warrants are issued against these appropriations. The taxes to meet these warrants are in actual practice never collected during the fiscal year. In fact, it is frequently the case that less than half has been collected at the end of the fiscal year. Assume that the anticipated revenue from sources other than ad valorem taxes was all collected, we have $60,000 in warrants to be paid from ad valorem taxes levied this year. But at the close of the fiscal year we have collected from that source only say $20,000 and still have $40,000 of unpaid warrants. Of course, this $40,000 will be collected in small portions during an indefinite time after the close of the fiscal year, but to keep our calculations simplified, let us assume that it is all collected at once during the following fiscal year, say in March. In the meantime the warrant holders have sued and procured judgment on the warrants and the same have become sinking fund obligations. The rule of the majority opinion then comes into operation. What happens? The $40,000 has become a sinking fund obligation. A sinking fund levy will be made at the commencement of the next fiscal year, but none has yet been made. The warrant obligations merged in judgment cannot be paid with the cash derived from taxes levied and collected to meet their payment. The cash collected becomes available for supplemental appropriations, or, if they are not made, for additional appropriations during the next fiscal year.

At the beginning of the next fiscal year the maximum levy with the limitation as allocated by the excise board (say six mills) is again levied, but in addition thereto a sinking fund levy is made to pay a portion of the $40,000 judgment. The cycle continues until in a few years levies are being carried in the sinking fund to pay obligations of prior years which have been merged in judgment to an extent almost equal to the general fund levy, and the money which is derived from taxes originally intended to pay the obligations becomes available for additional expenditures in subsequent years. The result is an evasion of the limitation on levy.

The purpose of permitting a contractual obligation to become a sinking fund charge when merged in judgment is to provide a means for payment of the obligation when the anticipated income from tax collections and other sources fall short. But to hold that this method of payment becomes exclusive, rather than cumulative, as does the majority opinion, makes the method provided a means for evading and practically destroying the limitation upon the power to tax as prescribed in our Constitution.

In arriving at its conclusion, the majority

of this court stresses section 28 of art. 10 of the state Constitution, which provides:

"Counties, townships, school districts, cities, and towns shall levy sufficient additional revenue to create a sinking fund to be used, first, for the payment of interest coupons as they fall due; second, for the payment of bonds as they fall due; third, for the payment of such parts of judgments as such municipality may, by law, be required to pay."

The third provision of the foregoing section of the Constitution authorizes and requires a sinking fund levy to pay such portion of a judgment as the municipality may by law be required to pay. I am unable to find in the provision any prohibition against the payment of a judgment or the unpaid portion thereof before a sinking fund levy has been made for the payment thereof. Thus, while the Constitution contemplates a means and method of paying judgments by sinking fund levies, it does not make that method exclusive.

Its purpose was to provide security to the creditors of municipalities and a means for meeting their obligations which would enable them to maintain their proper relative credit standing. It was not intended as a means for releasing other funds to make them available for additional expenditures, thus providing a method of avoiding the limitation on tax levies established by our Constitution. Inasmuch as the majority view brings about that result in practical operation, it goes beyond the purpose and violates the spirit of the law viewed from a comprehensive standpoint.

The constitutional provision above quoted must be considered in connection with our statute prescribing the "parts of judgments" for which a sinking fund levy shall be made. Section 1 of chapter 27, S. L. 1933, amending section 5913, O. S. 1931, provides in part:

"It shall be the duty of the officers of each municipal corporation in the state of Oklahoma by law authorized to levy taxes to make a levy each year for a sinking fund, which shall, with cash actually on hand and investments in such fund, excluding taxes in process of collection, be sufficient to pay all the bonded indebtedness of such municipality coming due during the following years; one year's interest on all outstanding bonds of such municipality; and an additional sum equal to one-third of the original amount of all outstanding judgments against the municipality, when one-third or more of such judgment remains due and unpaid, and in case less than one-third of such judgment remains due, then the levy shall cover the entire amount of such judgment yet remaining unpaid."

There is not in this statute any provision prevented the funds collected from a general fund levy for a given year from following the obligations of that year when merged in judgment. The majority opinion does not point out any statute containing such a provision. It diverts the collections resulting from tax laws from the obligations the levies were made to pay, but fails to point out any statute authorizing the diversion. It also releases the funds for other purposes, but fails to point out any statutory authority for such release.

Apparently the majority proceed on the theory that collections of previous years levy after judgment on the obligations of that year become a part of the surplus and may be disposed of as such.

This theory overlooks the important element that the collection cannot be classified as surplus to the extent of the outstanding obligations and that the warrant or contract indebtedness is still an outstanding obligation of the year, even though it has been reduced to judgment, since the change of the form of a debt into judgment constitutes merger. Merger does not constitute extinguishment. McRoberts v. McRoberts, 177 Okla. 156, 57 P. (2d) 1175. Thus for many purposes we look behind a judgment to the nature of the obligation. Robinson & Co. v. Stiner, 26 Okla. 272, 109 P. 238.

In St. L.-S. F. Ry. Co. v. Choctaw County Excise Board, 173 Okla. 312, 313, 48 P. (2d) 312, 313, this court said:

"A surplus balance, as used for the purposes herein considered, consists only of cash actually on hand in excess of all obligations for which it was originally pledged. Gallion v. Excise Board of Oklahoma County, 171 Okla. 76, 42 P. (2d) 508; In re Monsell, 142 Okla. 130, 285 P. 836."

Thus we have judicially recognized (1) that collections are pledged to the payment of the obligations, and (2) that a surplus balance does not exist until the amount of collections exceeds the obligations, and then only to the amount of the excess. Yet we now identify as surplus cash pledged to the payment of obligations which are still unpaid.

It has also been suggested in support of the majority view that the rule urged herein would involve a transfer from the general to the sinking fund without specific legislative direction. There are two an-

swers to this argument: (1) A transfer is not indispensable, since the funds can be applied directly in payment of the judgment to the judgment creditor and would only reach the sinking fund when the sinking fund is the judgment creditor's and holds the judgment as an investment. (2) If a transfer were required, statutory direction is not indispensable. This court has previously directed or approved transfers in recognition of the purpose of the law and in the absence of express statutory command. City of Yale v. Excise Board of Payne County, 156 Okla. 192, 10 P. (2d) 403; Protest of Reid, 160 Okla. 3, 15 P. (2d) 935.

It has also been urged that additional bookkeeping and difficulty in tracing and identifying obligations is avoided by the rule of the majority opinion. I am unwilling to concede that this is even a debatable argument. Destruction of limitations on tax levies should not be approved merely because those charged with the custody of public funds will be compelled to make additional mathematical calculations to discharge their duty in making proper disposition of funds.

We are herein called upon to decide whether collections of the type here involved apply on the obligations which they were intended to discharge in spite of a change in form of the obligations or become a part of the surplus balance existing at the close of the fiscal year in which the collections are made.

**We have no express statutory provision either way,** and must decide the question without it. The suggestion of the majority opinion that the view urged herein can only be adopted by the Legislature, if imbued with any merit at all, is equally potent as an objection to the majority view, which also proceeds without statutory direction.

In my opinion the Court of Tax Review should be affirmed on this point.

I shall next consider the levy for general fund purposes of joint union graded school district No. 1. This district includes territory situated in both Tulsa and Pawnee counties. The controversy arises by reason of the fact that the same class of property in the same school district is being taxed for school purposes at a different rate depending on the county in which it is situated.

Section 9 of art. 10 of our state Constitution, as amended by the special election of August 15, 1933, contains the following provision:

"Except as herein otherwise provided, the total taxes for all purposes, on an ad valorem basis, shall not exceed, in any taxable year, fifteen (15) mills on the dollar, to be apportioned between county, city, town and school district, by the county excise board, until such time as the regular apportionment is otherwise provided for by the Legislature."

This constitutional provision imposes a limitation on taxation accompanied by a grant of temporary legislative power to the excise boards of the various counties to apportion the limitation between the county and school districts and other governmental subdivisions located within the county. Atchison, T. & S. F. Ry. Co. v. Excise Board of Washington Company, 168 Okla. 619, 35 P. (2d) 274; Lowden v. Excise Bd. of Carter County, 168 Okla. 616, 33 P. (2d) 472.

In exercising the grant of power thus conferred, the excise board of Tulsa county allocated the limitation in such a manner that the portion of the levy of the district in question for school purposes made within the 15-mill general limitation for the fiscal year 1935-36 could not exceed 6 mills. At the same time the limitation on levy within the 15-mill provision on that portion of the district located in Pawnee county was fixed by the excise board of that county at 4.75 mills.

Subsequently each of the excise boards of the respective counties caused a levy to be made upon the taxable property in the portion of the district falling within its jurisdiction equal to the maximum allocated limitation, thus creating the inequality in tax burden upon the taxable property in the different sections of the district.

School districts situated in more than one county have long existed in this state. Prior to the amendment of section 9, art. 10, supra, the limitation on general fund levies for school purposes was imposed by constitutional and statutory enactments of state-wide application, but those limitations were superseded by the grant of legislative power to the excise board as contained in the constitutional amendment. Atchison, T. & S. F. Ry. Co. v. Excise Board of Washington County, supra. But that amendment failed to contain any express provision, temporary or permanent, which contemplated the situation now before us. The solution of the problem lies in the nature

of the thing being apportioned. Each of the excise boards had the unquestioned power to allocate the limitation to the portion of the district within the county. The authority of both must be recognized. But uniformity of taxation is contemplated in tax matters by our Constitution (section 5 of art. 10, Const.), as well as upon consideration of the general principles of law and equity. Such uniformity cannot exist if the same class of property in the same school district is burdened for the support of the same school or schools at a different rate. This principle of uniformity can only be observed in a school district situated in two counties under the present system of apportioning limitation by keeping the levy on property in both counties within the lowest limitation in either county. The trial court, in accord with these views, sustained the protest to a portion of the levy in the Tulsa county section of the district. In my opinion, our decision of this point should be one of affirmance.

We next consider the levy of school district No. 26 in Tulsa county. A portion of the levy was successfully protested on the theory that the levy was not in accord with the allocation of limitation previously made by the excise board.

The excise board of Tulsa county adopted a system of classification in connection with its apportionment of limitation under section 9 of art. 10, supra. The right of the board to make the classification or the reasonableness of the classification made is not herein questioned. See Protest of St. L.-S. F. R. Co., 171 Okla. 180, 42 P. (2d) 537. The question here is one of interpretation and application of the adopted apportionment. In the resolution making the apportionment, it was provided:

"In instances involving cities and incorporated towns and school districts having a valuation of less than fifty million dollars, the allocation shall be: To cities and incorporated towns not to exceed 4.531 mills and to school districts not to exceed 5 mills."

And:

"In instances not involving cities and incorporated towns, the allocation shall be to school districts, having a valuation less than fifty million dollars, 6 mills."

Schoo' district No. 26 had a valuation less than fifty million dollars. It had a town within its bounds, but no levy was made for the town.

The excise board construed and interpreted its own resolution to mean that "in-stances," as therein used, contemplated situations where levies must be made for both town and school district rather than territorial co-occupation by the two or different governmental subdivisions. The Court of Tax Review took the opposite view.

The meaning of the language used in the resolution is somewhat vague. The resolution was made by the excise board. It was susceptible of the administrative construction placed thereon by that board. Due regard to that construction should have caused its adoption in the trial court and this court.

I therefore dissent as to the disposition of this point.