## TULSA COUNTY EXCISE BOARD v. ST. LOUIS -S. F. R. CO. et al.

No. 27230.   May 18, 1937

ments for the years in which the levies were made. This money was derived from prior levies for free fair purposes. Although there were no outstanding unpaid warrants for the years in which such taxes were levied, there were outstanding and unpaid warrants of the free fair fund for other years in excess of the amount of funds involved. For the year 1935-36 there was included within the current expense fund of Tulsa county an appropriation for free fair the amount of which to be raised by ad valorem taxation far exceeded the alleged cash surplus here under consideration. The 1935-36 appropriation in this respect was made under the provisions of article 5, ch. 38, S. L. 1935. An examination of this 1935 act clearly discloses that the free fair levy thus made was by law required to be within the general or current expense fund of the county, and the levy therefor was not separate and apart from the current expense fund levy as had formerly been provided by statute under section 11, ch. 159, H. B. 241, S. L. 1925.

Appellant contends that the cash surplus was derived from a levy of taxes separate and apart from the general or current expense fund of the county, and that therefore it constituted a special fund and could not be used as a cash asset within the general fund. The cases of Protest of Chicago, R. I. & P. Ry. Co., 143 Okla. 100, 293 P. 539, and Dickinson v. Blackwood, 76 Okla. 175, 184 P. 582, are cited in support of such contention. These cases hold that funds derived from a levy of taxes for a specific purpose cannot be used for a purpose other than that for which the levy was made. However, we do not agree that the use of the funds here involved, in calculating the current expense fund levy here made, would constitute a violation of that rule of law. The levy from which the funds were derived was for free fair purposes. There was a large appropriation made within the county general fund for the year 1935-36 for free fair purposes, and some $25,000 of this appropriation was to be derived from an ad valorem tax levy. It is apparent to us that if such alleged surplus above referred to is included within the calculation of such levy, it will be a continued use of such fund for free fair purposes within the meaning of the cited cases. See In re Bliss, 142 Okla. 1, 285 P. 73, where the same reasoning and theory of law is applied.

Appellant further calls our attention to H. B. No. 42, S. L. 1935, ch. 38, art. 2, which provides as follows:

"Any cash surplus over and above the es-

Holly L. Anderson, Co. Atty., and Fred A. Fulghum, Asst. Co. Atty., for plaintiff in error.

J. W. Jamison and Cruce, Satterfield & Grigsby, for defendants in error.

WELCH, J. One of the three questions presented involves the protest of a portion of the county general fund levy upon the theory that there was a greater surplus of revenue which should have been used in the calculation of the levy than the amount actually used by the excise board. The item consists of $1,469.25 on hand at the end of the fiscal year 1934-35 from collection of prior years' taxes in excess of the require-

timated needs for the current fiscal year in the county fair fund of any county of this state may be used to pay any outstanding warrants of any previous fiscal year."

No argument or authority is presented by appellant which might assist us in arriving at a proper construction of H. B. No. 42, supra. It would appear from an examination of the statute itself that it permits the use of such funds for the purpose of paying other years' warrants, but that it does not require that it be so used. It is obvious that the funds were not so used, and there is nothing in the record to indicate any intention on the part of the local officials to so use the same. The Court of Tax Review by general order sustained the protest in this regard, which evidently included a finding that the funds had not been so used, and were not intended to be so used, and such finding is not against the clear weight of the evidence. We affirm the Court of Tax Review in sustaining the protest.

Another item of protest concerns the general fund levy for joint union graded school district No. 1. One of the questions raised in this connection has been decided by this court on this date in the case of Tulsa County Excise Board v. Texas-Empire Pipe Line Company et al., 180 Okla. 287, 68 P. (2d) 861. Such question is covered by paragraph 1 of the syllabus in that opinion, and the same is controlling here.

The action of the Court of Tax Review in sustaining this item of protest is reversed, with instructions to deny.

The other question presented here relates to protests concerning the general fund levies for school districts Nos. 2, 21, and 33, as well as joint union graded school district No. 1. Protests assert that the apportionment of millage by the excise board in its general order of apportionment is wholly arbitrary and capricious and works such unequal results as to render it void, and that the levy of 6 mills for these districts was therefore excessive by 1 mill. This protest was sustained by the Court of Tax Review. The order of apportionment allows to the county a limit of 5.469 mills. The order then provides as follows:

"In instances involving cities and incorporated towns and school districts having a valuation of less than fifty million dollars, the allocation shall be: To cities and incorporated towns not to exceed 4.531 mills, and to school districts not to exceed 5 mills.

"In instances not involving cities and incorporated towns, the allocation shall be

to school districts, having a valuation less than fifty million dollars 6 mills."

It is conceded that these school districts have valuations of less than fifty million dollars, and there are no cities or incorporated towns in either of them.

In support of its argument in this connection protestants cite Caddo County v. Chicago, R. I. & P. Ry. Co., 155 Okla. 32, 7 P. (2d) 900; Protest of Chicago, R. I. & P. Ry. Co., 164 Okla. 72, 22 P. (2d) 1002; Protest of Chicago, R. I. & P. Ry. Co., 164 Okla. 230 25 P. (2d) 960; People v. Knopf, 183 Ill. 410, 56 N. E. 155; Crookall v. Mathews, 61 N. J. L. 349, 39 Atl. 659, and Board of Education of Ogden City v. Hunter, 48 Utah, 373, 159 P. 1019, and others.

It is the tenor of the cited cases and of the argument of counsel that the number of pupils within a school district is the chief consideration to be borne in mind in determining the amount of funds which will be necessary to furnish adequate educational facilities. Perhaps that is true, and in some cases of distribution of funds for such purpose it would seem apparent that a division of same on that basis alone would be best and proper, and the same is probably true in the grant of authority to levy a tax for such purposes, where there is shown no other proper or necessary element to be considered at the same time. However, the excise board in the action here taken was not engaged in the distribution of funds, but was apportioning the constitutional limit of levy, and in so doing it was limited by the 15-mill constitutional limit, and of necessity was concerned with the requirement of other units of government, as well as school districts in the apportionment of the 15-mill limit of levy. The argument here is to the effect that school districts which were allowed only 5 mills had a much greater scholastic enumeration and approximately the same (or less) valuation than districts which were allowed 6 mills, so that if the 5-mill district had been allowed 6 mills the scholastic per capita of levy proceeds would still be less than the sum which was granted to the 6-mil'l districts. The effect of the argument is to say that, because one school district is permitted to levy a tax which will raise a greater scholastic per capita amount than another district, such action is arbitrary.

It is our view that the action is arbitrary only if no lawful reason may be advanced for same. As we understand the authorities given us on the question, action taken by proper agencies is usually not considered

arbitrary unless a fixed policy of the law has been violated or disregarded.

The 1933 amendment to section 9, art. 10, of the Constitution, under which the excise board proceeded, did not authorize the excise board to apportion funds or fix or apportion the exact amount of levy of or for the various subdivisions of government. The amendment specifically provided that the limit of ad valorem levy should be 15 mills. The excise board was given the duty and authority to apportion this **limit** of levy. It is clear that in this regard the board violated no law. No school district here involved was permitted to make a levy which, added to the other levies permitted, exceeded the constitutional limit of 15 mills.

Can it then be successful'y urged that, because a certain school district cannot levy a tax greater than 5 mills (because of the fact other units of government are permitted by the law and the excise board to levy 10 mills of the 15-mill limit, the propriety of which is not questioned), another district is prohibited by the Constitution or some other law from levying an amount sufficient for its needs within the limits of the constitutional provisions and the order of the excise board? We think not.

The action of the excise board appears to be based upon the theory that the school districts here involved could not supply their school needs if the board limited them to less than 6 mills, and such a levy did not exceed the 15-mill limit. It is apparent that those districts wherein other units of government had consumed 10 mil's of the limit, could not be allowed more than 5 mills by reason of the constitutional limitation. It may be that the districts limited to 5 mills were unab'e to levy sufficient to supply their needs, but that fact or condition alone should not place a further limitation on other districts not so situated. Nor do we discern arbitrary action on the part of the excise board when it is 'apparent that such action was impelled by the express limitations contained in the Constitution.

The action of the Court of Tax Review in sustaining this item of protest is reversed, with instructions to deny.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS, CORN, and HURST, JJ., concur. BUSBY, J., dissents. RILEY and GIBSON, JJ., absent.