**BOWLES, Mayor, v. PERKINSON.**

No. 12619—Opinion Filed March 21, 1922.

(Syllabus.)

1. **Mandamus—Ministerial Duties of Officers.**

A writ of mandamus may lawfully issue, from a court having jurisdiction, to compel an executive officer to perform a mere ministerial duty, which does not call for the exercise of his judgment or discretion, but which the law gives him the power and imposes on him the duty to do.

2. **Mandamus — Peremptory Writ Without Evidence—Lack of Defense.**

In mandamus proceedings, where the averments in the alternative writ are sufficient to authorize the relief sought, and the return of the respondent does not state a defense, it is not error for the trial court to grant the peremptory writ without hearing testimony.

Error from District Court, Bryan County; Geo. S. Marsh, Judge.

Mandamus by W. M. Perkinson against R. P. Bowles, Mayor of Durant. Judgment for plaintiff, and defendant brings error. Affirmed.

Hatchett & Ferguson and Deck & Newman, for plaintiff in error.

McPherren & Cochran and Hayes & McIntosh, for defendant in error.

McNEILL, J. W. M. Perkinson commenced this action in the district court of Bryan county against R. P. Bowles, mayor of Durant, for a writ of mandamus to compel said mayor to issue and sign certain warrants in payment of two claims that had been regularly allowed by the city council of Durant. The petition alleges, in substance, that plaintiff filed with the city council of Durant his claims (giving the number of said claims) for salary as water superintendent for the month of May, 1921, and for the month of June, 1921, which claims were duly allowed by the city council, and the city clerk had issued warrants for said claim, but the mayor refused to sign and have the clerk attest the same. The district court issued the alternative writ, and defendant, Bowles, filed his return and as reasons for not signing said warrants stated, first, that Perkinson had never been selected, chosen, or appointed as water superintendent since the 1st of May, 1921; second, that charges of incompetency and dereliction had been preferred against the water superintendent and the mayor had suspended Perkinson and claimant had never demanded trial and was still suspended; third, that the warrants were so drawn that it would make it a crime for the mayor to sign the same; fourth, that the water superintendent had drawn excessive salary in the past in the sum of $2,900. Defendant admitted that he was mayor.

Motion was made to quash and dismiss the writ, which was denied. The court made an order requiring the defendant to set out the charges filed against the water superintendent, and it was admitted in open court that no charges were filed by any one, except the mayor made certain oral charges himself, and then made an order attempting to suspend the water superintendent. Motion was made for judgment on the pleadings, which was sustained. From

said judgment the defendant has appealed.

The only question presented is whether the return of the mayor stated a defense. In determining whether the return stated any defense on behalf of the mayor it will be necessary first to consider the duties of the mayor in signing warrants drawn upon the city treasurer; whether said duties are ministerial, or require the exercise of discretion or judgment. Section 603, Rev. Laws 1910, provides for presenting claims against the city and empowers the city council to audit and allow said claim. Section 562, Rev. Laws 1910, makes it the duty of the mayor to sign orders and warrants drawn upon the treasurer for money, and for him to require the city clerk to attest the same, and affix the seal of the city thereto and keep an accurate record thereof in a book provided for that purpose. There is no section of the statute that has been called to our attention that authorizes or empowers the mayor to audit claims or reject them after the same have been allowed by the city council. The Legislature has seen fit to invest the power of auditing and allowing claims in the city council. The mayor's duties in signing warrants are very similar to those of county clerks in attesting warrants of the county.

The powers and duties of the city council in allowing claims against the city are almost identical with the powers and duties of the board of county commissioners in allowing claims against the county. This court upon several occasions has held the acts of the county clerk in attesting warrants are purely ministerial, after the county commissioners have audited and allowed the claims. Cases upon this question are reviewed in the case of Bodine v. McDaniel Auto Co., 69 Oklahoma 170 Pac. 899, and Estus, County Clerk, v. State, 83 Okla. 181, 200 Pac. 1002; Clark, State Highway Com'r, v. Warner, Co. Clerk, 85 Okla. 153, 204 Pac. 929. In the above cases this court held, in substance, that the duty to audit and allow claims was in the board of county commissioners, and after the claims had been regularly presented and allowed the attesting of the warrant was purely a ministerial act. Having reached this conclusion, the defense of whether Perkinson had been selected or appointed as water superintendent was a matter that was adjudicated by the council in allowing the claim. The power to appoint or employ the water superintendent is in the city council. Section 476, Rev. Laws 1910. The question of whether he was temporarily suspended by the mayor was also a question

that was necessarily adjudicated at the time of allowing the claim.

The defense that the water superintendent had drawn an excessive salary in the past was not a question for a ministerial officer to raise; he had no duty in auditing and allowing the claims after the same had been allowed by the council.

The only defense that deserves consideration is the defense that the warrant was so drawn that it would make it a crime for the mayor to sign it; it being contended that the warrant failed to disclose upon its face the amount in the fund upon which the warrant was drawn, or the amount of appropriation that had been made to pay the same. The mayor does not plead as a defense that there were no funds to pay this warrant, but simply that the warrant does not disclose this fact. Section 562, Rev. Laws 1910, places the duty upon the mayor to sign the warrants, and it is his duty to require the city clerk to attest the same and keep an accurate record thereof. The statute does not provide who shall prepare the warrant, and if the warrant is not properly prepared, and if we concede it is the duty of the city clerk to prepare the warrant, it becomes the duty of the mayor under the above section of the statute to require him to prepare it in proper form. Although no statute is called to our attention that requires the clerk to prepare the warrant, it would seem it was the duty of the clerk to prepare the warrant under the orders of the mayor, and if the clerk did not prepare it in proper form the mayor should take steps to require the clerk to perform his duty.

Numerous cases are cited upon the question of whether an officer who is temporarily suspended is entitled to his salary, and whether the city can plead an offset against the claim of a party who filed the bill. These questions might be presented to the city council, and it might refuse to pay or allow the bill on these grounds. Those questions are for the consideration of the city council in auditing and allowing the claims. These are not questions that can be raised by an executive officer in performing a ministerial duty.

The mayor is the chief officer of the city, presides over the city council, and necessarily presides over the city council when they audit and allow bills, the same as the chairman of the board of county commissioners presides over the board in allowing claims. The fact that the chairman of the board of county commissioners, or the

mayor, may not agree with the council upon the allowance of a claim, grants him no authority to refuse to do those duties imposed upon him that are purely ministerial.

For the reasons stated, the judgment is affirmed.

PITCHFORD, V. C. J., and JOHNSON, MILLER, KENNAMER, and NICHOLSON, JJ., concur.