## DICKEY v. CORDELL et al.

No. 26278.    March 3, 1936.

Mounts & Chamberlin and Roe & Roe, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Latimore, Asst. Atty. Gen., V. E. McInnis, and James H. Ross, for defendants in error.

CORN, J. This action was commenced in the district court of Tillman county by the plaintiff in error, as plaintiff, against H. B. Cordell, as principal, and Maryland Casualty Company, a corporation, as surety, to recover on the bond of the said H. B. Cordell, as Warehouse Commissioner of the state of Oklahoma, the value of certain wheat stored by the plaintiff and his assignors in the elevator of the Carl Cassidy Grain Company, a bonded warehouse licensed by the state of Oklahoma and doing a bonded warehouse business at Frederick, Okla. The parties will be referred to herein as they appeared in the trial court.

The plaintiff charges and relies upon official negligence on the part of the said warehouse commissioner as grounds for recovery. That part of the plaintiff's petition setting forth the acts of negligence complained of is as follows:

"That all of said wheat was placed in said elevator by reason of the fact that said elevator had been licensed as a bonded warehouse by the defendant, H. B. Cordell, as State Warehouse Commissioner, and was under his supervision, but plaintiff states that said defendant wrongfully, negligently, and in total disregard of his duties as warehouse commissioner, permitted said elevator to operate as a bonded warehouse with a bond of only three thousand dollars, and to accept wheat in excess of sixty thousand (60,000) bushels without requiring the bond of said elevator to be increased, and failed to keep any check on said elevator, to see that a sufficient amount of grain was kept on storage to meet the outstanding receipts issued therefor, and carelessly and negligently permitted said elevator to dispose of the wheat for which warehouse receipts had issued, by shipping same out of the state of Oklahoma."

The warehouse in which plaintiff's grain was stored was not a warehouse operated by the commissioner under the Warehouse Act, but was a licensed elevator under authority of section 12936, O. S. 1931, which is as follows:

"The State Board of Agriculture shall have authority, and is hereby authorized and directed to provide such rules and regulations as will permit elevators to become bonded warehouses. In accordance with the terms of this act, such elevators shall be required to make surety bonds in such amount as may be specified by the State Board of Agriculture, for the full and faithful performance of the terms of their contract."

Under authority of said section of the statute, the Board of Agriculture, in January, 1927, passed and adopted certain rules and regulations permitting elevators to became bonded warehouses. Rule 3, section 2, provides:

"The amount of the bond required for bonding a warehouse shall be fixed by the commissioner, but in no case shall be less than $3,000 (three thousand dollars) for each firm, corporation or individual owner, and shall be increased at any time upon request of the commissioner in writing. Any increase in the amount of a bond required by the commissioner shall not exceed the amount based upon 25c per bushel for grain, $10 per bale for cotton, of the maximum amount in bushels, bales or tons it is intended to cover or protect."

Rule 8, section 1, subdivision (b), provides:

"Each warehouseman shall keep on hand at all times enough of any fungible commodity, and of the proper grade, to cover all outstanding certificates of like products issued by him or his manager."

Rule 8, section 1, subdivision (b), pro-

"It shall be the duty of the commissioner, or his duly authorized agents, to check up the contents and records of each bonded warehouse as often as is necessary, in the opinion of the commissioner, for the purpose of finding if such contents and records compare with the records in the office of the commissioner."

Section 12936, supra, expressly states that elevators shall be required to make surety bonds in such amount as may be prescribed by the State Board of Agriculture, and since the statute says that the board may specify the amount of the bond, the amount of the bond is necessarily discretionary with the board. Therefore, the duty imposed upon the Board of Agriculture to require surety bonds from the various warehouses is a discretionary duty.

Rule 3, section 2, supra, specifies the minimum amount of a warehouse bond shall be $3,000, and that the maximum amount shall not exceed 25c per bushel of the maximum amount of bushels of grain it is intended to cover or protect. The rule imposes the

duty of increasing or decreasing the amount of the bond within the prescribed limits upon the Secretary of the Board of Agriculture, who is ex-officio Warehouse Commissioner, and this duty is likewise a discretionary duty.

The plaintiff does not allege that the defendant was guilty of malice or oppression in office or of willful misconduct, but alleges only that he was guilty of negligence. The rule is well settled that a public officer cannot be held liable for mistakes he might make in the exercise of a discretionary duty.

This rule is stated in the case of Keifer v. Smith, 103 Neb. 675, 173 N. W. 685, as follows:

"In the absence of malice, oppression in office, or willful misconduct, public officers cannot ordinarily be held liable for mistaken exercise of discretion, or error in judgment, in the performance of official duties."

In the case of Roerig v. Houghton, 144 Minn. 231, 175 N. W. 542, the rule is stated as follows:

"A public officer, whose functions are judicial or quasi judicial, cannot be called upon to respond in damage for the honest exercise of his judgment within his jurisdiction, however erroneous his judgment may be."

The rule is stated in 22 R. C. L., beginning on page 485, as follows:

"Where an officer is invested with discretion and is empowered to exercise his judgment in matters brought before him, he is sometimes called a quasi judicial officer, and when so acting he is usually given immunity from liability to persons who may be injured as the result of an erroneous decision, provided the acts complained of are done within the scope of the officer's authority, and without willfulness, malice, or corruption. This immunity from civil liability for a mistake in judgment extends to errors in the determination of both law and of fact. Therefore, where the question of his liability is involved, it is not material whether he used reasonable care in ascertaining the facts on which his judgment was founded. As regards errors of law he is equally protected when he adopts a mistaken construction of an act of Congress or a state statute, or when he misunderstands the common law. Under this principle the members of a board of health are not personally liable for a mistake of judgment in the exercise of a power to locate a contagious disease hospital within the city. But if a public officer acting in a semijudicial capacity exceeds his jurisdiction and authority, he may render himself amenable to civil liability in the same manner as officers whose functions are purely ministerial."

We find many decisions following this rule, but none to the contrary, and in view of the fact that the defendant is not charged with willful misconduct, malice, or oppression in the performance of his official duties, the judgment of the trial court sustaining the demurrers to plaintiff's petition should be, and is, affirmed.

McNEILL, C. J., and BAYLESS, WELCH, and GIBSON, JJ., concur.