## BOARD OF EDUCATION OF OKLAHOMA CITY v. CLOUDMAN et al.

No. 26736. July 11, 1939.

Frank Wilkins, for plaintiff in error and on the briefs.

Walter A. Lybrand argued the matter on rehearing for plaintiff in error.

Paul R. Dillard, for defendants in error Dr. H. H. Cloudman et al.

A. J. Follens, for defendants in error Thad N. Wells et al.

Hayes, Richardson, Shartel, Gilliland & Jordan, for defendants in error Ray M. Scruggs et al.

Jarman, Brown, Looney & Watts and Edgar Fenton, for defendants in error Standard Accident Insurance Company et al.

Maurice M. Thomas, for defendants in error National Surety Corporation et al.

Chandler, Shelton & Fowler, John W. Swinford, and Edgar S. Vaught, Jr., for defendants in error New York Casualty Company et al.

GIBSON, J. This action was commenced in the district court by the board of education of Oklahoma City against certain former members of said board, certain employees of the district, including the school treasurers and the sureties on the official bonds of the latter, to recover damages growing out of the alleged unlawful expenditure of funds of the school district.

The various defendants filed separate demurrers, assigning the insufficiency of the petition to state a cause of action, the statute of limitations, and misjoinder of causes of action. The demurrers were sustained on all three grounds assigned. Plaintiff declined the opportunity to file separate actions and elected to stand on the allegations of its petition, whereupon appropriate judgment was entered, and plaintiff appeals.

After sustaining demurrer for misjoinder of causes of action the trial court is not required to rule upon other grounds assigned in the demurrer, but it is within its discretionary powers to rule upon every ground for demurrer set forth therein, and its various rulings may be reviewed by this court. Although we have heretofore held that where demurrer is properly sustained for misjoinder of causes this court need not consider the rulings on those grounds of demurrer going to the merits of the case (Fishencord v. Peterson, 173 Okla. 382, 49 P.2d 128), we may, nevertheless, in our discretion fully review all such rulings.

In such case, if the trial court correctly found a misjoinder of causes of action but was wholly in error otherwise, the judgment will be affirmed and the plaintiff's cause will have failed otherwise than on the merits. If the court, in addition to correctly declaring a misjoinder, properly sustained the demurrer to the sufficiency of the petition, affirmance must follow, and plaintiff's cause will have failed upon the merits. This is true where, as in the instant case, plaintiff was given an opportunity to amend and to file separate actions.

With relation to misjoinder of causes of action, each defendant in this case was charged with unlawfully paying out or unlawfully receiving funds belonging to the school district. It is sufficient to say that none was affected by the alleged cause of action against the others. Unless each cause of action affect all the defendants, there is a misjoinder. Bryan v. Sullivan, 55 Okla. 109, 154 P. 1167; Fishencord v. Peterson, supra. The rule is stated in Bryan v. Sullivan, supra, as follows:

"While, under section 4738, Rev. Laws 1910, several causes of action may be joined in one suit, they cannot be so joined, except in actions to enforce mortgages or other liens, unless each cause of action stated affects each of the parties to the suit."

It should here be noted that the petition does not attempt to charge the defendants

with conspiracy to defraud the school district.

Considering the petition from the standpoint of the sufficiency of its allegations to state a cause of action against the various defendants, we find that in substance the defendant school board members and the clerk of the board, the school treasurers, and the defendant employees are charged, respectively, with issuing, paying, and receiving warrants drawn against appropriations made by the excise board of Oklahoma county for the payment of the expenses for which said warrants were issued and that said appropriations were held to be unauthorized and void in another action. The liability of the defendant surety companies depends, of course, upon the liability of their principals, the treasurers aforesaid.

The allegations from which we gather the above-stated charge are substantially as follows:

The excise board of Oklahoma county made an appropriation in due form based upon an estimate approved by the voters of the school district for expenses of the health department of the schools during the fiscal year 1931-1932. Included in said appropriation were items of salary for the medical directors, nurses, a dentist, supplies and car service, and items of salary of supervisors and principals attending meeting of the National Education Association. Certain taxpayers, in the manner provided by statute, protested the tax levy for these appropriations as being unauthorized by law. The Court of Tax Review sustained the protest, and its judgment was affirmed by this court. Protest of Chicago, R. I. & P. Ry. Co., 164 Okla. 239, 25 P.2d 690. In that case the court said "there must be a distinct legislative authority for every tax levy," and held that no authority existed for levying a tax for the purposes in question. That case was disposed of October 3, 1933.

For the fiscal year 1932-1933 a like appropriation was made and the levy therefor was protested by the same taxpayers. On June 12, 1934, this court, following the last-cited case, held that no authority existed for such levy. Chicago, R. I. & P. Ry. Co. v. Excise Board, 168 Okla. 428, 33 P.2d 1081.

Thereafter certain informing taxpayers, proceeding pursuant to sections 6831, 6832, O. S. 1931, 70 Okla. Stat. Ann. §§ 132, 133, made demand upon the plaintiff board that an action be instituted for the recovery of the alleged unauthorized expenditures aforesaid. Thereupon the present action was commenced.

If the foregoing facts and circumstances as disclosed by the petition reveal a cause of action against any of these defendants, the liability must arise from the common law or under section 6831, supra, or it must appear that the provisions of section 12315, O. S. 1931, 68 Okla. Stat. Ann. § 341, have been knowingly violated.

Under the common law, school district officials or employees are ordinarily not personally liable for school funds paid out or ordered paid where the official sanction or requisition therefor made by superior officers is fair on its face, unless they were aware that the order or written authority therefor was issued without legal sanction or for an unlawful purpose. See 56 C. J. 344, § 220.

Section 6831, above, so far as the question of fundamental liability is concerned, does not enlarge upon the common law. See State ex rel. Sheel v. Ingram, 164 Okla. 244, 23 P.2d 648. The section reads as follows:

"Every officer of any school district who shall hereafter order or direct the payment of any money or transfer of any property belonging to school district in settlement of any claim known to such officers to be fraudulent or void, or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement made or attempted to be made, for any school district, by any officer or officer(sic) thereof, and every person having notice of the facts with whom such unauthorized, unlawful or fraudulent contract shall have been made, or to whom, or for whose benefit such money shall hereafter be paid, or such transfer of property shall be made, shall be jointly and severally liable in damage to all innocent persons in any manner injured thereby, and shall be furthermore jointly and severally liable to the school district affected for double the amount of all such sums of money so paid, and double the value of property so transferred, as a penalty to be recovered at the suit of the proper officers of such school district, or of any resident taxpayer thereof, as hereinafter provided."

In any event, the officer must know that the expenditure is fraudulent or unauthorized by law and void, and other persons charged must have had notice of the facts, before liability may attach.

Section 12315, supra, constitutes the only statutory injunction against the disbursement of funds regularly appropriated by the excise board for the school district. That section, so far as the same is material here, reads as follows:

"Pending the expiration of the time within which protests may be filed with the State Auditor no warrant shall be issued or debt contracted by any municipality for any purpose except as provided hereinafter. * * *

"School Districts: For salaries and compensation of officers and clerical employees; for salaries and compensation of teachers; for office supplies, blank books, stationery and printing; for light, fuel and water; for library and school apparatus; for maintenance of buildings and grounds including salaries of janitors and caretakers."

If it may be said correctly that the circumstances as alleged in the petition and set out above were sufficient to charge the defendants with knowledge of the illegality of the appropriations, then a cause of action was stated against them, and the trial court in sustaining the demurrer on the ground of insufficiency of the allegations committed error.

All items were paid out on regular warrants prior to the final determination of the above-mentioned protest cases.

It has been held that there must be distinct legislative authority for every tax levy. Protest Chicago, R. I. & P. Ry. Co., supra. Since every person of legal capacity is charged with knowledge of the law, presumption would seem to charge the defendants with knowledge of the illegality of the appropriations in question in this case. But that rule does not obtain in cases of this character. Every official act of a public officer is accompanied with the presumption of legality. Usually, nothing short of willful misconduct will subject an officer to liability for acts done in the exercise of his official discretion. This is especially true, and applicable, where he has violated no positive law. This court has heretofore expressed itself in this regard. In Dickey v. Cordell, 176 Okla. 205, 55 P.2d 126, the rule is stated as follows:

"In the absence of malice, oppression in office, or willful misconduct, public officers cannot ordinarily be held liable for mistaken exercise of discretion, or error in judgment, in the performance of official duties."

This is an expression of the common law, and applies to every discretionary act of all public officials in this state, in the absence of positive legislative enactment to the contrary.

The Supreme Court of Arkansas, in a case of very similar purport, has expressed itself on this subject in a manner which seems fully to accord with right and justice. In Hendrix v. Morris, 203 S. W. 1008, that court, when considering certain expenditures of the school district, said:

"In Hendrix v. Morris, 127 Ark. 222, 225, 191 S. W. 949, we held that the directors of this district and the treasurer had no authority to expend the money of the district for such purposes, but it does not follow that the directors are individually liable for the money thus expended. While it is alleged and admitted that the directors had no authority to issue the warrants for the purposes mentioned, there is no allegation that they acted willfully or maliciously. This is essential in order to make the directors personally liable. Where school directors act in good faith, believing at the time that they have authority under the statute to expend the money for the purposes for which they issue warrants, they will not be held individually liable to the district for moneys so expended, even though they have no such authority. * * *"

It is true, the Arkansas statute vests in the school board certain discretionary powers in the management of school affairs and payment of the expense thereof, and the court in the last-cited case said that the discretionary character of the official duties saved the members of the board from liability for mere mistake in the exercise of their powers.

Our statutes also give to the school board many discretionary powers in the management of the different departments of the schools. It is given sole control over the schools. Section 6867, O. S. 1931 (later amended, 70 Okla. Stat. Ann. § 189); and it is not literally true that there must be a distinct legislative authority for every tax levy in the sense that every item for which a tax levy is made must be distinctly stated in some statute. The school board has and can exercise those powers that are granted in express words; those fairly implied in or necessarily incidental to the powers expressly granted, and those essential to the declared objects and purposes of the corporation (1 Dillon, Municipal Corporations, § 89). There were many expenses arising in connection with the conduct of schools that were impliedly authorized by statute even before the 1937 amendment of section 6867, supra. They were numerous, and some were too well known to warrant mention here. In these things the school board must exercise its discretion, and in so doing it prepares its estimates and the excise board in the exercise of its judgment makes an appropriation accordingly. That appropriation carries with it a presumption of legality, and any funds ordered paid out and received in good faith, and properly within the appropriation, cannot be recovered by the district from those parties who in good faith participated in such expenditures, in the absence of statute to the contrary.

Referring now to the only statutory inhibition against the school officers with reference to expenditures, section 12315, supra, prohibits the issuance of warrants during protest period for all purposes except as pro- .

vided therein. These exceptions are more or less named in a general way and include salaries and compensation of officers and clerical employees, and teachers, for office supplies and other things named. It does not specify the character of teacher or officer, or employee. The teachers, officers, and employees paid in the instant case are neither specifically included nor specifically excluded in the exceptions named in the statute. The provisions are not entirely free from ambiguity. Either board, the school or the excise, would be compelled to exercise its individual discretion and judgment in determining whether an appropriation should be made for the items in question; at least these boards must so act until it is judicially determined that the expenditures are unauthorized in law. And the school board must use its discretion, in view of the ambiguity aforesaid, in determining whether the particular items are payable during the protest period. These payments are not made at the board's peril. They are made pursuant to statutory authority and are therefore legal when made, even though the appropriations may later be declared illegal in an action brought to determine their validity.

Further, a school treasurer is a ministerial officer and he is not compelled to examine into the validity of an appropriation when a warrant in due form drawn thereon is presented to him. He need not investigate beyond the face of the warrant. Here, the warrants complained of were not attached to the petition, nor is it alleged that they on their face carried any evidence of any invalidity. If there is an appropriation, his duty is limited to payment of the warrant if the same is executed in due form. In fact, he may not refuse to pay upon the plea that the appropriation is illegal. This rule has been applied to county treasurers, and may apply as well to school treasurers. In Estus v. State, 83 Okla. 181, 200 P. 1002, the court held as follows:

"The acts of the county clerk and county treasurer in attesting and registering warrants being ministerial, and the funds being available for this specific purpose, it is the duty of the clerk to attest said warrants and the treasurer to register the same."

In that case we also held, in effect, that in a proceeding to compel the county clerk and treasurer to attest and register warrants on funds appropriated for such purpose, the act being ministerial, an objection that the act under which the claim was incurred and the warrant drawn was in violation of Constitution, art. 10, sections 19, 29, is not available to such officers. See, also, Bodine v. McDaniel Auto Co., 69 Okla. 143, 170 P. 899;

Bowles v. Perkinson, 85 Okla. 244, 205 P. 770.

The demurrer to the sufficiency of the petition was properly sustained. Other assignments will therefore receive no consideration.

The judgment for defendants is affirmed.

BAYLESS, C. J., and RILEY, CORN, HURST, DAVISON, and DANNER, JJ., concur. WELCH, V. C. J., and OSBORN, J., dissent.

RILEY, J. (concurring). Generally the rule is that public officials must have specific authority for the expenditure of public funds, but as applied to a school board or school officials, a distinction must be made, for by statute a discretion is vested in school boards whereby they may determine what constitutes a school purpose.

Herein the school board deemed service of doctors, dentists, and nurses a school purpose. Subsequently the court held to the contrary. (I think erroneously, for it is evident that an epidemic may render the school plant and a whole corps of teachers under contract utterly worthless as being without a personnel to receive instruction.)

Herein expenditures were made pending protest and final decision.

The demurrer was properly sustained, for, while allegations are deemed true when tested by a demurrer, herein the allegations specifically state the fact of payment pending protest and decision. Therefore, we need not conclude according to the general words of the allegation, but should consider the expenditure lawful and legal, in good faith as being within statutory discretion and authorized by law.

I would not apply a rule of law as unchangeable as that of the Medes and Persians, but indulge a corrective element even as to the product of courts and base this upon enlightenment and re-examination. I would not make the mistakes of yesterday the law of today.

While the statute relative to recovery of public funds illegally or unlawfully expended is the same as to all officials, that which is a school purpose and which is not is a thing upon which the best judgment of men may differ. Consequently, generally, authorization for expenditure must exist, but specifically as to school boards, a proper expenditure may be made when, within a discretion, unabused, the object is deemed to be a school purpose. Where good faith ex-

ists, I am not willing to penalize school officials for misjudgment.

When it is found that such an official may be rendered personally liable and his reputation seriously impaired because of lack of occult powers to foretell what is and what is not a school purpose, who will be found to occupy school offices? Then, none but the unworthy and designing would function, and regard for public offices in general will not be enhanced.

This court held in the Harmon County Case (Wade v. Board of County Com'rs of Harmon County, 161 Okla. 245, 17 P.2d 690) (without my concurrence) that even a board of county commissioners' expenditure based on a statute subsequently held unconstitutional could not be recovered from the members when expenditures were made in good faith. The rule may be properly applied to the case at bar.

WELCH, V. C. J. (dissenting). I agree with much of the legal philosophy of the majority opinion as to discretionary powers of the board of education in operating the schools, but cannot agree that in their discretion they have the power to spend public funds for unauthorized and illegal purposes, and I think as a whole the majority opinion is not justified by the facts shown by the petition which are admitted by the demurrer, and that as a whole it is clearly contrary to the statutes, and to our former decisions.

The majority opinion overlooks the fact that expenditures sued upon here were made in excess of the income and revenue provided for each of the two fiscal years involved. It may be that it is the position of the majority that this fact is unimportant in view of the absence of affirmative allegations of corruption or bad faith. It seems to me, however, that this fact is of great importance. I think it justified and requires the opposite conclusion in the case, but, at least, that it merits specific discussion in the court's opinion.

The specific items of expenditure now involved in this action, or most of them, were directly attacked as being unauthorized by law and illegal. This direct attack was made in the manner authorized by law, by a taxpayer filing his protest and specifying as ground thereof that the appropriation was for an illegal purpose. It is true the protest was not finally decided for some months, but as soon as the matter could be reached in the Court of Tax Review the protest was sustained as to certain items of the appropriation which were held to be illegal. An appeal was prosecuted by protestee, and this court finally adjudicated the illegality of items now involved. In the meantime, and after the protests were filed pointing out specifically the illegal items, the board had gone right along issuing warrants and expending public funds for the protested and illegal items. This action includes warrants issued upon identical items which were protested in due time, held by the Court of Tax Review to be illegal, and held by this court to be illegal. Some of the expenditures were even made upon items after they had been declared illegal by the Court of Tax Review, and while the board was in this court urging, but unsuccessfully, that the Court of Tax Review should be reversed. Now this latter statement does not apply to all of the expenditures here sued upon, but does apply to some of them, and by approving the sustaining of the general demurrer, it seems to me this court deems it wholly unimportant that expenditures were made after protest was filed pointing out specific illegality, and even after first judicial determination of illegality.

If it be true that the board of education is justified in assuming legality of an appropriation after its approval by the excise board, could it still assume an illegal appropriation to be legal after its illegality had been specifically pointed out by a taxpayer's protest? Could it still presume an illegal appropriation to be legal after the Court of Tax Review had solemnly adjudicated its illegality? I think not.

If it be true that illegal expenditures may be recovered only when the officers had knowledge of the illegality, then would those officers not have that knowledge when a tax protest was filed formally stating the illegality? Or when the Court of Tax Review tries the matter and sustains the protest and adjudicates the illegality? I think so.

I am not overlooking the fact that an appeal was taken from the Court of Tax Review, and that the illegality of the items involved was not *finally* and *conclusively* adjudged by that court. But I would think that to be unimportant when considering the right of the board to treat the illegal items as being legal, or the right of the board to remain without knowledge of the illegality.

As a matter of law, a municipal appropriation for a wholly unauthorized and illegal purpose is an illegal appropriation from the time it is first made, not merely from and after the time it is *finally* adjudicated to be illegal.

Even if the board of education thought these appropriations to be legal in the beginning, yet after a taxpayer filed a protest pointing out the specific illegality, common prudence would have directed that the board

check the matter before spending further. Likewise, after the Court of Tax Review observed and judicially declared the illegality, the board of education, with but casual regard for the rights of the taxpayers, and some regard for their own duties with respect to public funds, might well have ceased spending on the illegal appropriations. This would have been fair in spite of the fact that the board of education procured an appeal to be taken, or one was taken in the name of the county, where it was sought to reverse the Court of Tax Review.

I do not assert that liability exists as to each of the large number of expenditures here involved, nor do I assert that each of the defendants is liable as claimed in the petition. The petition is not thoroughly well drawn. It is my view, however, that the petition sufficiently alleges the illegal expenditure of public funds. It seeks recovery from the persons who received the funds, as well as from the officers who paid it out. I think the general demurrer should be overruled; that after the various causes of action are properly docketed and the various defenses are asserted, the case should be tried; that upon trial the ultimate liabilities, if any, should be determined. I think in no other way can the law be followed, and the rights of the school district be protected.

It seems to me that under the majority opinion the rights of taxpayers to obtain protection by tax protest have been seriously impaired, if not lost sight of in large measure. The majority opinion emphasizes the fact that all these expenditures were made prior to the *final* determination of the above-mentioned protest cases. Thus it is said as to this case that although funds are expended for an unauthorized and therefore illegal purpose, the same may not be recovered back because the expenditure was made before *final judicial determination* of the illegality. Thus, under this rule, the taxpayers, at the first opportunity, may protest illegality, and sustain their position on the first possibility of trial of the issue, and again on appeal, only to find that in their complete victory they have utterly lost; though winning every engagement they have lost the conflict. An illegal expenditure of their own funds, which with all possible diligence and in the manner provided by law they sought to prevent, has been made before they could bring their successful efforts to a *finality,* and they are then denied the right even to obtain a return to the treasury of those illegally expended funds. I feel forced to disagree.

As pointed out in the majority opinion, the petition alleges that the expenditures involved were made for an unauthorized and illegal purpose. This is admitted by the general demurrer, and is taken by us as true for the purpose of testing the demurrer.

It seems to me that the majority opinion proceeds upon the theory that although the school district funds are expended for an unauthorized and therefore illegal purpose, those funds cannot be recovered back even in a timely action by the district, either from the officers who wrongfully allowed the claims and paid out the money, or from the persons who received the money.

This conclusion disregards the statute which fixes liability and right to recover in cases of illegal expenditure, as well as in cases of expenditure knowingly fraudulently made. The majority conclusion overthrows former decisions of this court where we have expressly held that recovery may be had for unauthorized and illegal expenditures, with no showing of bad faith.

In State ex rel. Wood v. Kimbrell, 152 Okla. 239, 5 P.2d 366, it was held in paragraph 3 of the syllabus:

"Taxpayers are compelled by the Constitution and the statutes to yield to governmental agencies in collecting and making a legal distribution of tax money, and these governmental agencies must with strict fidelity protect the taxpayers from obligations not authorized by law."

This case is not otherwise in point exactly, as it involves a fraudulent contract, but it does announce the statutory duty of the officers to protect taxpayers from obligations not authorized by law.

In State ex rel. Awtrey v. Randolph, 139 Okla. 254, 281 P. 956, it was definitely held that the school board was liable for double the amount paid out on illegal claims with nothing whatever said about knowledge of illegality on the part of the board. In the first paragraph of the syllabus it is held:

"In an action brought under sections 10383 and 10384, C. O. S. 1921, to recover double the amount of illegal claims paid by the members of the school board of a common school district, where it clearly appears from the evidence that the claims complained of and paid were illegal, held error on the part of the trial court, at the request of the plaintiff, to refuse to direct a verdict in his favor."

It must be remembered that section 5964, O. S. 1931, is identical with section 6831 mentioned in the majority opinion, except that 5964 includes county, city, and town officials as well as school district officials. In both sections the words "known" and "knowledge" and "notice" are identically used. In State v. Moreland, 152 Okla. 37, 3 P.2d 803, this

court considered an action brought under sections 8590 and 8591, C. O. S. 1921, the same as sections 5964 and 5965, O. S. 1931. In the Moreland Case it was held in the 14th paragraph of the syllabus as follows:

"The knowledge of the officers referred to in section 8590, C. O. S. 1921, is knowledge of facts and not of law. County officers, as other citizens, are presumed to know the law and are charged with knowledge of the law. They may not be relieved of liability for their unlawful acts by a claim of ignorance of the law."

And in the body of the opinion it was definitely pointed out that:

"The language of section 8590, Id., 'known to such officers to be fraudulent or void,' refers to knowledge of facts and not knowledge of law. It is fundamental that every officer, as well as every other citizen, is charged with knowledge of the law, and no one may defend against the liability because of his ignorance of the law."

In State v. Cole, 178 Okla. 567, 63 P.2d 730, a taxpayer's action against city officers and Cole, who received the money, it was definitely held that recovery could be had under sections 5964 and 5965, O. S. 1931, upon a showing of illegality of contract and of expenditure, without showing fraud, which is clearly equivalent to a conclusion that bad faith is not necessary if it is true that illegality of the expenditure exists.

In Dorsett v. State, 144 Okla. 33, 289 P. 298, it was held in paragraph 5 of the syllabus:

"Every officer who shall order or direct the payment of any money belonging to any county in settlement of any claim made in pursuance of any unauthorized, unlawful, or fraudulent contract is liable to the county for double the amount of all such sums of money so paid as a penalty to be recovered in a suit brought by the proper officers of such county or any resident taxpayer thereof. C. O. S. sections 8590, 8591."

And it was pointed out in the body of the opinion that under these statutes, officers are liable for illegal expenditure, aside from the question of bad faith.

In McGuire v. Skelton, 36 Okla. 500, 129 P. 739, this court considered an action against township officers for illegal expenditure. There, as in the Cloudman Case, the trial court sustained a demurrer to the petition. In reversing, this court held the petition stated a cause of action to recover double the amount of unlawful expenditures. While the opinion does not copy the allegations of the petition, there is nothing in the opinion to indicate that this court deemed it important or material that the plaintiff allege and prove knowledge of illegality or bad faith. It might be assumed from the decision that the allegations were quite general.

In Moreland v. State, 175 Okla. 38, 51 P. 2d 945, this court held most definitely that lack of knowledge of illegality, lack of bad faith, or good faith on the part of the officers was not a valid defense in such a suit for recovery of money illegally expended. In that case the officers urged their lack of bad faith and lack of knewledge of illegality, and upon trial sought to offer evidence of complete good faith, and that they had used every precaution to satisfy themselves that the claim was valid.

The trial court refused to admit such defensive proof and on appeal this court expressly sustained that holding.

In State ex rel. Morrison v. City of Muskogee, 70 Okla. 19, 172 P. 796, this court considered the same statutory provisions in the 1910 Statutes, appearing there as sections 6777 and 6778. It was in that case definitely held that the city officials were liable for the unauthorized and illegal expenditure of $70,-000. It was apparently deemed wholly unimportant whether the petition charged any bad faith or knowledge of illegality. It is clearly apparent from the petition that the officers acted without any bad faith, and, on the contrary, acted in entire good faith in a matter they deemed of considerable importance to the city. Nevertheless the expenditure of the people's money was for an unauthorized and therefore illegal purpose, and the officers were held liable.

In State ex rel. Shilling v. Oklahoma City, 67 Okla. 18, 168 P. 227, this court held in paragraph 1 of the syllabus as follows:

"By reason of sections 6777 and 6778, Rev. Laws 1910, upon performance of the conditions therein prescribed, an action may be maintained in the name of the state on the relation of one or more resident taxpayers of a city against the officers of a city who have allowed a claim and paid out money of the city in pursuance of any unauthorized, unlawful, or fraudulent contract, and against any person to whom or for whose benefit such money should have been paid to recover double the amount of money so misappropriated."

In the body of the opinion it is clearly indicated that suit was based upon an expenditure of $40,624 alleged to be "upon an alleged unlawful, illegal, unauthorized and void contract." There, as in the Cloudman Case, the trial court sustained a demurrer to the petition, which this court reversed. There is nothing whatever in the opinion to indicate any necessity to allege or prove bad faith or knowledge of illegality.

**408**

In Dowler v. State, 179 Okla. 532, 66 P.2d 1081, we sustained a judgment against city commissioners for unauthorized and illegal expenditures and without any showing of bad faith.

The majority opinion, though not mentioning either of these nine former decisions, goes contrary to the principle of each of them. To reach this conclusion the majority opinion relies upon the following decisions: Sheel v. Ingram, 164 Okla. 244, 23 P.2d 648; Dickey v. Cordell, 176 Okla. 205, 55 P.2d 126; Estus v. State, 83 Okla. 181, 200 P. 1002; Bodine v. McDaniel Auto Co., 69 Okla. 143, 170 P. 899; Bowles v. Perkinson, 85 Okla. 244, 205 P. 770, and the Arkansas case of Hendrix v. Morris, 203 S. W. 1008.

The Sheel Case, supra, is not in point. It was based upon the misconduct of a county treasurer, county assessor, and tax ferret, described as being "malfeasance in office and a course of conduct of the most reprehensible nature," and constituting "a conspiracy for the purpose of cheating and defrauding the taxpayers of Osage county." That action involved funds, as stated in the opinion, "which plaintiff alleges were funds belonging to the county which had been misappropriated by the defendants to their own use and benefit."

The Dickey Case, supra, is not in point. It in no manner involves the expenditure of public funds. It does not concern the statutory rights and liabilities we here consider. It is an action to recover damages for loss of individual personal property, alleged to have resulted from negligence of H. B. Cordell, as State Warehouse Commissioner.

In the Estus Case, supra, the court considered an action to compel the county clerk to issue a warrant and the treasurer to register the same. It was specifically pointed out that a valid specific appropriation of funds for the purpose had been made, and that no protest was ever filed against making said appropriation. There was involved no illegality of purpose of expenditure. The officers were correctly required to issue and register the warrant within the fund appropriated. I do not see therein any support for the majority opinion.

The Bodine Case, supra, does support the majority opinion in so far as the majority opinion relieves the clerk of liability, but does not support the majority opinion as to the other officers or persons involved in the instant case. There this court considered an action to compel Bodine, the county clerk, to issue a warrant on a claim approved by the board of county commissioners and within a specific appropriation. The clerk sought to contend that the motor vehicle purchased was not a necessary vehicle or equipment for road and bridge work. This court required him to issue the warrant, but took occasion three times in the opinion to point out that the county would be safe, and the commissioners would be liable to the county if the expenditure was unauthorized and therefore illegal. Nor was it said that such liability would depend on proof of knowledge of illegality or bad faith. This court was not there dealing with any question of the liability of the county commissioners to the county if such expenditure should be adjudged to be illegal. Therefore it would have been improper to express any definite view thereon. Nevertheless the court clearly implied that such a liability might exist. And a few years later, when such a liability on an identical expenditure was asserted, this court sustained the liability, on the illegality of the expenditure and without bad faith. Dorsett v. State, supra. Thus in the Bodine Case this court said:

"* * * There is no statute that makes the clerk in any way the guardian of the people's money or property, nor is he vested with any supervision in respect thereto. The statutes provide ample means for relief in cases of misappropriation of county funds by the board of county commissioners or unauthorized expenditures of the county's money. * * *"

And further in the opinion it was said:

"In this case it is not necessary to express, nor do we express, any opinion as to the authority of the board of county commissioners to purchase the automobile. We merely hold that, if such authority does not exist, the county has ample protection, not through the county clerk, but through other means wisely provided by the Legislature. * * *"

And further in the opinion it was said:

"* * * The members of the board of county commissioners and their bondsmen, not the county clerk, must respond in case of unlawful expenditure of public funds."

It is quite apparent that by those expressions this court meant that the county would have protection by the return of its money illegally spent, under these statutory provisions here considered. And that meaning was carried into effect in the subsequent Dorsett Case, supra. Thus in effect the Bodine Case is authority for the view contrary to the majority opinion in this case as concerns liability of other defendants than the clerk.

In the Bowles Case, supra, it was sought to require the mayor of a city to sign a warrant for a salary claim allowed by the city council. This court said the duty of the mayor was quite similar to that of the county clerk in attesting county warrants, and the Bodine Case was followed. This decision likewise

sustains the conclusion that the *clerk* is not liable, but further than that is not in point at all.

I agree that the clerk of the board of education is not liable. That conclusion is supported by the Bodine and Bowles Cases, supra, but further than that the majority opinion is not supported by any former decision of this court. On the other hand, it is contrary to numerous former decisions of this court, as I have pointed out.

I regard it, then, as unimportant that the majority opinion is supported by the lone Arkansas decision in Hendrix v. Morris, supra, unless this court is now inclined to overrule our own numerous decisions and adopt the apparent view in Arkansas that officers are not liable for the illegal expenditure of public funds unless they act willfully or maliciously, or in bad faith. If our courts desired to adopt that view they could not do so as long as we have the specific statutes here involved. Those statutory provisions have been in effect continuously since statehood. Section 5964, O. S. 1931, 62 Okla. St. Ann. sec. 372, with historical notes. The provisions were re-enacted to have specific application to school district officers by the Fourth Legislature in 1913, as a part of the general school law then adopted. See S. L. 1913, chap. 219, page 518, art. 5, sec. 32; section 6831, O. S. 1931, 70 Okla. St. Ann. sec. 132. We have many times considered them, and heretofore enforced them.

I think we should now affirm the trial court's judgment in favor of the defendant clerk of the school board, and otherwise should reverse the judgment in favor of the other defendants, and remand the cause, with directions to overrule the general demurrers and let issue be joined and the causes be tried. Then, upon development of the facts, the liability of any defendant, and the amount thereof, if any, may be fairly and justly decided. In no other way can we follow the statutes, as I see it.

If this court should now consider adopting a different course, and basing that action on the Arkansas decision in Hendrix v. Morris, supra, it is interesting to note that in that case, as here, the suit was brought against the governing board *and treasurer*. And while in that case the members of the board were held not liable by reason of the great discretionery powers of such boards in that state, it was there held that the treasurer *was liable*.

Thus there is no cited decision by this or any other court which supports the majority opinion in the full extent to which it goes, and although the case is briefed at great length, I have not been able to find any fully supporting authority. I think we would do well, then, to follow our own statutes, and our own former decisions.